2013 OK 87

**MASTERCRAFT FLOOR COVERING, INC., Plaintiff/Appellant,**

v.

**CHARLOTTE FLOORING, INC., Defendant/Appellee.**

**No. 111529.**

Supreme Court of Oklahoma.

Oct. 22, 2013.

Tadd J.P. Bogan, James E. Weger, Tulsa, Oklahoma, for Plaintiff/Appellant.

Stephen K. Metcalf, William H. Spitler, Tulsa, Oklahoma, for Defendant/Appellee.

KAUGER, J:

¶ 1 The only issue presented is whether the trial court had personal jurisdiction over a North Carolina corporation who hired an Oklahoma company to perform work in North Carolina. Because of the totality of contacts with the Oklahoma-based corporation, we hold that it did.

## ALLEGED FACTS

¶ 2 Turner Construction, a construction company working on a Harrah's Cherokee Hotel Tower (Casino) in Cherokee, North Carolina, hired the defendant, appellee, Charlotte Flooring, Inc. (CFI) to perform flooring work on the Casino project. CFI is a North Carolina corporation, with its principal place of business in Charlotte, North Carolina.

¶ 3 In May of 2010, CFI telephoned the plaintiff/appellant, Mastercraft Floor Covering, Inc. (Mastercraft), an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma. According to Mastercraft, CFI telephoned to ask it to install carpet in the Casino. Subsequently, numerous telephone and email negotiations followed, culminating in a proposal dated May 25, 2010, prepared in Tulsa, Oklahoma, by Mastercraft and sent to CFI in North Carolina.[1] In June of 2010, CFI sent Mastercraft a "Scope of Work for Commercial Installation" which was dated June 25, 2010, and was signed and initialed by Mastercraft on July 13, 2010.

¶ 4 Mastercraft sent workers from Oklahoma to Charlotte to install carpet in the Casino. The project was done in stages over a twenty month period. The owner of the project purchased the carpet directly from the materials manufacturer in Dalton, Georgia, and the owner furnished it to the project site for installation. Scheduling was done through emails between CFI and Mastercraft.

¶ 5 An affidavit from Mastercraft's president provides that:

1) CFI made the initial contact with Mastercraft by telephone to Oklahoma, and Mastercraft executed the May 25, 2010, proposal letter from its office in Tulsa.

2) The "Scope of Work" document was e-mailed from Charlotte to Oklahoma and Mastercraft signed it in Tulsa.

3) The contact between the two companies began in May of 2010, and lasted until March of 2012.

4) Mastercraft mailed invoices to Charlotte and CFI mailed 12 payments to Oklahoma for the work performed.

5) At least 30–40 phone calls and 140 emails were made regarding scheduling and a description of the work to be performed before CFI failed to pay the $140,976.23 balance it owed to Mastercraft.

¶ 6 Mastercraft submitted approximately 42 emails as a sampling of the correspondence which occurred between May of 2010 and March of 2012. The emails cover such topics as: start dates; communication problems; installations schedules; phone call follow ups; requests that phone calls be made; insurance; and construction delays. Other than its collaboration with Mastercraft, CFI insists it has no other contacts with Oklahoma. However, it does admit that it maintains a website, www.charlotteflooring.com, which is accessible to the general public and contains general information about its services.

¶ 7 On September 6, 2012, Mastercraft filed a breach of contract action in the District Court of Tulsa County, alleging that CFI had failed to pay for services and materials provided pursuant to their contract. On October 26, 2012, CFI sought a special entry of appearance so that it could object to the Tulsa court's jurisdiction over it. The trial court granted the special entry of appearance on October 31, 2012. On November 19, 2012, CFI filed a motion to dismiss for lack of personal jurisdiction and supporting brief, arguing that any business relationship existing between Mastercraft and CFI involved insufficient contacts for the Oklahoma court to exercise personal jurisdiction.

¶ 8 The trial court held a hearing on the motion to dismiss on January 28, 2013. On February 6, 2013, the trial court entered a journal entry of judgment dismissing the

1. The letter dated May 25, 2010, is on Mastercraft letterhead and it is titled, "Proposal for Harrah's Cherokee Casino." It calls for the installation of 13,650 yards of carpet, customized seaming and border transitions, installation of pad, and specifications for seams. It also includes services of 24 hour a day owner and supervisor availability, clean up and vacuuming as well as crew travel and lodging. The yardage was based on Turner Construction blue prints dated March 16, 2010, and provided as part of a bid set. The total listed on the leter was $242,373.00, and it was signed by Gary Freeby of Mastercraft.

case for lack of personal jurisdiction. Mastercraft appealed and in a May 17, 2013, unpublished opinion, the Court of Civil Appeals affirmed the trial court. We granted certiorari on September 23, 2013, to address whether an out-of-state company, who solicits business from and hires an Oklahoma company to perform work in another state, is subject to Oklahoma's jurisdiction.

¶9 **BECAUSE OF THE TOTALITY OF THE CONTACTS WITH THE OKLA-HOMA–BASED CORPORATION, THE TRIAL COURT HAD PERSONAL JURISDICTION.**

■ ¶10 Oklahoma's long-arm statute, 12 O.S.2011 § 2004(F), allows jurisdiction over non-residents in Oklahoma courts. It provides that "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States."[2] In *Fields v. Volkswagen of America Inc.*, 1976 OK 106, 555 P.2d 48, 52, we explained that the intent of the Oklahoma long-arm statute is to extend the jurisdiction of Oklahoma courts over non-residents to the outer limits permitted by the Oklahoma Constitution[3] and by the due process clause of the United States Constitution.[4]

¶11 CFI argues that it has not directed its activities in any way toward Oklahoma, and that it would be unfair and substantially unjust to permit Mastercraft to bring this action in Oklahoma, merely because the Oklahoma contractor and its Oklahoma employees voluntarily accepted the benefits associated with voluntarily traveling to North Carolina to perform work on a North Carolina project. Mastercraft contends that pursuant to *Hough v. Leonard*, 1993 OK 112, 867 P.2d 438, personal jurisdiction over CFI is proper.

■ ¶12 When a non-resident deliberately engages in significant activities in a forum state or creates continuing obligations between the non-resident and the residents of the forum, the non-resident submits to the jurisdiction of the state.[5] Jurisdiction may not be avoided merely because the non-resident did not physically enter the forum state. Jurisdiction under the long-arm statute is predicated on foreign state activity which results in forum state harm.[6] A non-resident who has purposefully directed activities at

2. This statute has been amended several times. A portion of one amendment was held unconstitutional by *Douglas v. Cox Retirement Properties, Inc.*, 2013 OK 37, 302 P.3d 789, and later re-enacted. However the pertinent provision remains unchanged.

3. The Okla. Const. art. 2, § 2 provides:

All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry.

4. The U.S. Const. amend. 14, § 1 provides in pertinent part:

... No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or deny to any person within its jurisdiction the equal protection of the laws.

5. *Hough v. Leonard*, 1993 OK 112, ¶7, 867 P.2d 438. *See also, Burnham v. Superior Court of California*, 495 U.S. 604, 609–10, 110 S.Ct. 2105, 2109–10, 109 L.Ed.2d 631, 638–39 (1990) (California court had personal jurisdiction in divorce action over New Jersey resident who was served with process while temporarily in California for activities unrelated to suit; due process was not violated by exercise of the jurisdiction. Due process does not necessarily require states to adhere to unbending territorial limits on jurisdiction.); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–77, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528, 543–44 (1985). The unilateral activity of the resident is not enough to exercise personal jurisdiction over a non-resident. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1298 (1958); *Architectural Bldg. Components Corp. v. Comfort*, 1974 OK 134, ¶14, 528 P.2d 307. Foreseeability of causing an injury to another state alone is not sufficient to establish jurisdiction. The foreseeability that is critical to due process analysis is that the defendant's conduct and connection with the forum state is such that the person should reasonably anticipate being hailed into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296–97, 100 S.Ct. 559, 566–67, 62 L.Ed.2d 490, 501 (1980). However, a state generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. So long as it creates a substantial connection with the forum, even a single act can support jurisdiction. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957).

6. *Hough v. Leonard*, see note 5, supra; *Fields v. Volkswagen of America, Inc.*, 1976 OK 106, ¶6, 555 P.2d 48.

forum residents must present a compelling case that jurisdiction would be unreasonable,[7] or that the contacts were so insignificant that the exercise of in personam jurisdiction would offend the traditional notions of substantial justice and fair play.[8]

¶ 13 When a nonresident corporation exercises the privilege of conducting activities in a state, it also enjoys the benefits and protections of the laws of that state and any obligations connected with that activity may be enforced in that state's courts.[9] The focus is on whether there is some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.[10] Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could have reasonably anticipated being haled into court in that state.[11] A single act can support jurisdiction so long as it creates a substantial connection with the forum state.[12] For purposes of due process, jurisdiction is proper if the suit was based on a contract that has substantial connection with the state.[13]

¶ 14 Twenty years ago, in *Hough v. Leonard*, 1993 OK 112, 867 P.2d 438, we addressed whether a non-resident engaged in the oil and gas business had sufficient contacts with Oklahoma for an Oklahoma court to assert personal jurisdiction. In *Hough*, an Oklahoma resident who owned and operated an oil field service company was hired by a non-resident oil business to work on an oil well in Kansas. When problems with the Kansas oil well were unresolved, the non-

resident oil company telephoned the Oklahoma resident to ask for rates to do more work on the well. The Oklahoma resident faxed quotes out of state to the non-resident and was hired to work on the Kansas well. The only other connection that the non-resident had with the state was that one of his business partners held a recorded mineral leasehold interest in Oklahoma.

¶ 15 When Hough brought suit against the non-residents in Oklahoma to recover for payment of his services, the Court held that, based on the totality of the contacts, the non-residents contact with Oklahoma was sufficient to exercise personal jurisdiction over the non-residents. We said:

> Here, the non-residents have made the necessary minimum contacts with Oklahoma. After exhausting Kansas firms, the non-residents hired an Oklahoma company, in which Hough was a subcontractor, to work on the well. Although it is disputed whether the non-residents called Hough for the purpose of obtaining advice, quotations, and services on the Kansas well, the jury returned a verdict in Hough's favor. It is not disputed that a contract was entered into over the telephone in Oklahoma. Regardless of who initiated the contact, the non-residents could have refused to enter into a contract and thereby alleviated the risk of defending a suit commenced in Oklahoma. McMillan also has recorded leasehold interests in Oklahoma and relies on Oklahoma law to protect his interest in those leases. Finally, after dealing with Hough, the non-residents contacted at least two more Oklahoma compa-

---

7. *Hough v. Leonard*, see note 5, supra; *Burger King Corp. v. Rudzewicz*, see note 5, supra.

8. *Hough v. Leonard*, see note 5, supra; *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945); *Yery v. Yery*, 1981 OK 46, ¶ 10, 629 P.2d 357. *See also, Shaffer v. Heitner*, 433 U.S. 186, 206–07, 97 S.Ct. 2569, 2581, 53 L.Ed.2d 683, 699 (1977) (All assertions of state jurisdiction, including in rem and quasi-in rem actions must be evaluated according to the minimum contacts standard.).

9. *Conoco Inc. v. Agrico Chemical Company*, 2004 OK 83, ¶ 19, 115 P.3d 829; *International Shoe Co. v. Washington*, see note 8, supra at 326 U.S. at 319, 66 S.Ct. at 160.

10. *Conoco Inc. v. Agrico Chemical Company*, see note 9, supra; *Hanson v. Denckla*, see note 5, supra.

11. *Conoco Inc. v. Agrico Chemical Company*, see note 9, supra; *World–Wide Volkswagen Corp. v. Woodson*, see note 5, supra.

12. *Conoco Inc. v. Agrico Chemical Company*, see note 9, supra; *McGee v. International Life Ins. Co.*, see note 5, supra.

13. *Conoco Inc. v. Agrico Chemical Company; McGee v. International Life Ins. Co.*, see note 5, supra.

nies to inquire about providing services on the Kansas well. While each individual contact made by the non-residents may not be sufficient standing alone to maintaining minimum contacts, the totality of the contacts are sufficient to exercise personal jurisdiction over the non-residents.[14]

¶ 16 Here, there is no leasehold interest involved. Nevertheless, CFI elected to do business with Mastercraft, an Oklahoma company. The interaction between the Oklahoma company and the North Carolina company was not a single isolated transaction which involved the unilateral activity of Mastercraft.[15] CFI chose to engage in activities with an Oklahoma corporation. Between May of 2010, and March of 2012, over 30–40 phone calls and 140 emails were exchanged. Communications were further maintained by mailing checks for services performed to the Oklahoma company.

¶ 17 Although CFI disputes the existence of a contract, this argument is meritless. The undisputed facts show that the Oklahoma company was asked to perform work in North Carolina, and that it received at least partial payment for the work performed. At the very least an oral contract was formed. CFI's voluntary election to do business with an Oklahoma company, and the stream of communications it maintained with that Oklahoma company constitute an effort by CFI to avail itself of the privilege of conducting activities in Oklahoma. Even more so than the facts demonstrated in *Hough*, supra, CFI's election to do business with an Oklahoma entity and its electronic and postal communications within Oklahoma constitute minimum contacts with this state. The alleged controversy arose out of, or was related to, these contacts. CFI's demonstration of its willingness and ability to conduct business with an Oklahoma corporation also demonstrates that the burden placed on CFI in defending itself in our courts would not rise to a level of constitutional concern.

¶ 18 Other Oklahoma precedent supports the conclusion that the out-of-state corporation has made the necessary minimum contacts with Oklahoma. For example, in *Conoco Inc. v. Agrico Chemical Co.*, 2004 OK 83, ¶ 21, 115 P.3d 829, an Oklahoma company negotiated and executed a purchase agreement in Oklahoma and we noted that the ties to Oklahoma far exceeded the minimum contacts requirement. In *Gregory v. Grove*, 1976 OK 5, ¶ 6, 547 P.2d 381, 382, we held that a totality of contacts between non-resident defendants and Oklahoma are to be considered in determining the sufficiency to exercise jurisdiction under long-arm service—and that this may include telephone communications and letters.

¶ 19 In *B.K. Sweeney Co. v. Colorado Interstate Gas Co.*, 1967 OK 95, ¶¶ 12–15, 429 P.2d 759, we recognized: that the absence of multiple acts within the state is not necessarily fatal to the exercise of state power over a defendant; that a non-resident who engages in a single act or consummates a single transaction in a foreign state could be amendable to suit for damages arising out of that transaction; and that there exists no constitutional barrier to holding a non-resident subject to personal jurisdiction, irrespective of whether additional contacts in the state exist. In *Yankee Metal Prod. Co. v. District Court*, 1974 OK 135, ¶ 10, 528 P.2d 311, the Court found personal jurisdiction

---

14. *Hough v. Leonard*, see note 5, supra at ¶ 13.

15. *Anderson v. Shiflett*, 435 F.2d 1036, 1038 (10th Cir.1971) wherein a Texas resident hired an Oklahoma architect to draw plans for a project. The contract was made in Texas and covered projects located in Texas. The only Oklahoma contact was that the architect drew some of the plans at his Oklahoma office. Oklahoma lacked jurisdiction over the service contract because it was a single isolated transaction which involved the unilateral activity of the Oklahoman. Nor is it a case in which a party has failed to allege enough facts to assert jurisdiction. *See, Crescent Corp. v. Martin*, 1968 OK 95, ¶ 27, 443

P.2d 111, wherein an Oklahoma resident entered into an employment contract for consulting services with a corporation not licensed or doing business in Oklahoma. Oklahoma did not have jurisdiction because the facts alleged in the record were insufficient to sustain jurisdiction. The record was silent as to where the contract of employment was made, accepted, or to be performed. The Crescent Court refused to infer facts that a party failed to allege in order to assert jurisdiction. Even if these cases were persuasive at the time they were decided, the law and the way in which companies do business have evolved considerably in the last 40 years.

over a non-resident whose only contact with Oklahoma was through telephone and mail communications. The non-resident made initial contact with Oklahoma by telephone to request a quotation on specifications of materials. All of these cases support the conclusion that minimum contacts were more than sufficient under the facts alleged in this cause.

## CONCLUSION

¶ 20 In this instance, minimum contacts have been established and form the basis of Mastercraft's claim. Although the work was done in North Carolina, the contract appears to be executed in Oklahoma, and even if it were not, CFI's business activities were directed to Oklahoma and are the very activities that gave rise to this claim. While CFI may be burdened by having to come to Oklahoma to defend this matter, it chose to do business here. This state has a clear interest in helping its citizens obtain convenient and efficient resolution of controversies arising from contacts in this state. North Carolina's interest in this controversy is no greater than Oklahoma's. The trial court has personal jurisdiction over CFI.[16]

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT REVERSED AND CAUSE REMANDED.**

COLBERT, C.J., REIF, V.C.J., KAUGER, WATT, EDMONDSON, COMBS, GURICH, JJ., concur.

WINCHESTER, TAYLOR, JJ., dissent.

16. *Hough v. Leonard*, see note 5, supra; *Conoco Inc. v. Agrico Chemical Co.*, see note 9, supra; *Gregory v. Grove*, 1976 OK 5, ¶ 6, 547 P.2d 381; *Yankee Metal Prod. Co. v. District Court*, 1974 OK 135, ¶ 10, 528 P.2d 311; and *B.K. Sweeney Co. v. Colorado Interstate Gas Co.*, 1967 OK 95, ¶¶ 12–15, 429 P.2d 759.