MONTGOMERY v. AIRBUS HELICOPTERS



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:MONTGOMERY v. AIRBUS HELICOPTERS

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MONTGOMERY v. AIRBUS HELICOPTERS
2018 OK 17
Case Number: 114045
Decided: 03/06/2018
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2018 OK 17, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

ANKE MONTGOMERY, Individually and as Personal Representative of the Estate of Mark Montgomery, Deceased; EAGLEMED, L.L.C.; a Delaware Corporation, and STARR INDEMNITY AND LIABILITY COMPANY, a Texas Corporation and Domiciliary, Plaintiffs/Appellants,
v.
AIRBUS HELICOPTERS, INC., a Delaware Corporation; And SOLOY, LLC., Defendants/Appellees,
and
HONEYWELL INTERNATIONAL, INC., Defendant.

CERTIORARI FROM THE COURT OF CIVIL APPEALS, DIVISION IV
APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY

Honorable Bryan C. Dixon, Trial Judge

¶0 The plaintiff/appellant, EagleMed, L.L.C. (EagleMed) purchased an unassembled helicopter from Airbus Helicopters, Inc. (Airbus) in Texas. EagleMed transported the helicopter to Wichita, Kansas, where it was assembled at EagleMed's headquarters to be used in Oklahoma as an ambulance helicopter. The engine used in the helicopter was manufactured by defendant, Honeywell International, Inc. (Honeywell) with design installation instructions by the defendant/appellee, Soloy, L.L.C, (Soloy). The helicopter crashed in Oklahoma and killed two Oklahoma residents: the pilot and a flight nurse. The pilot's widow/personal representative, EagleMed, and the helicopter's insurer, Starr Indemnity and Liability Company (Star), filed a products liability/negligence lawsuit in Oklahoma County, Oklahoma, against Airbus, Soloy, and Honeywell. The trial court dismissed Airbus and Soloy for lack of personal jurisdiction, and the Court of Civil Appeals affirmed. We granted certiorari to address the issue of minimum contacts with the State of Oklahoma. We hold that the trial court did not err in granting the motion to dismiss for a lack of personal jurisdiction.

COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT AFFIRMED.

Robert D. Tomlinson, Ross N. Chaffin, Oklahoma City, Oklahoma, and
Timothy A. Loranger (pro hac vice), Los Angeles, California, for Plaintiff/Appellant Anke Montgomery.

Craig Allen Fitzgerald, Steven J. Adams, Tulsa, Oklahoma, and
Gary Don Swaim (pro hac vice), Dallas, Texas, for Plaintiffs/Appellants EagleMed, L.L.C. and Star Indemnity and Liability Company.

Mark R. McPhail, Alex M. Sharp, Oklahoma City, Oklahoma, and
Eric C. Strain (pro hac vice), San Francisco, California, for Defendant/Appellee Airbus Helicopters, Inc.

Brock C. Bowers, Katie R. McCune, Oklahoma City, Oklahoma, and
Geffrey W. Anderson (pro hac vice), Jonathan W. Harrison (pro hac vice), Fort Worth, Texas, for Defendant/Appellee Soloy, L.L.C.

KAUGER, J.:

¶1 We granted certiorari to address whether the defendants/appellees whose products were used to make an ambulance helicopter had sufficient minimum contacts with the State of Oklahoma in order to establish personal jurisdiction over them after the helicopter crashed in Oklahoma, killing two Oklahoma residents. We hold that they do not.

FACTS

¶2 This cause arises from an ambulance helicopter crash (accident helicopter), on February 22, 2013, shortly after takeoff in Oklahoma City, Oklahoma. The pilot, Mark Montgomery (pilot), and his crew, responded to an emergency medical transport call at Integris Baptist Hospital in Oklahoma City, Oklahoma for Watonga, Oklahoma. The crash killed two Oklahoma residents who were onboard the helicopter: the pilot, and the flight nurse, Chris Denning. The onboard flight paramedic, Billy Wynne, survived with severe injuries which resulted in amputation. The crash destroyed the helicopter. Allegedly, the crash was witnessed by dozens of Oklahoma residents.

¶3 EagleMed, L.L.C. (EagleMed), a Delaware incorporated L.L.C. with its principal place of business in Wichita, Kansas, employed the Oklahoma pilot and the crew. EagleMed operates a helicopter ambulance service for the region. The crash was allegedly caused by an air intake defect which allowed ice to accumulate in the air inlet and enter the compressor, causing the engine to flame out and crash.

¶4 Airbus Helicopters SAS, a French Company, designed and manufactured the accident helicopter in France, and sold it to the appellee, Airbus Helicopters, Inc. (Airbus), a Grand Prairie, Texas, company. The original engine was replaced by Honeywell International, Inc. (Honeywell) of Morristown, New Jersey, who designed and manufactured the replacement engine. An Olympia, Washington company, Soloy, L.L.C. (Soloy), provided the engineering and design for installation of the engine. Starr Indemnity and Liability Company (Starr) insured the helicopter.

¶5 In 2004, Airbus sold the helicopter, an AS350B, to Ballard Aviation, Inc. d/b/a EagleMed. Airbus delivered the helicopter in an unassembled condition to Texas for shipment, but it did not make the arrangements for it to be delivered to Wichita, Kansas. Rather, the Airbus standard practice was to deliver their helicopters to their place of business in Texas, and have the buyers handle any further transportation services. The purchase agreement between EagleMed and Airbus contained a forum selection and choice of law clause regarding any litigation to take place in Texas.[1]

¶6 According to Airbus, it: 1) does not conduct any business activities in Oklahoma; 2) is not registered to do business in Oklahoma, nor does it own any real or personal property in Oklahoma; 3) does not keep any officers, directors, employees, or agents in Oklahoma; and 4) does not hold any bank accounts or have any telephone listings in Oklahoma. However, Airbus did know that this helicopter would be going to EagleMed's headquarters in Wichita and purportedly knew it would be used in Oklahoma.

¶7 On July 21, 2008, four years after EagleMed purchased the helicopter from Airbus, Soloy sold and shipped an "engine conversion kit" to EagleMed at their headquarters in Wichita, Kansas, which was installed shortly thereafter. According to Soloy, it did not specifically design its conversion kit for the Oklahoma market, nor did it direct advertising or marketing materials specifically to Oklahoma. Soloy has no offices, agents, employees, or property in Oklahoma nor does it distribute to Oklahoma.[2]

¶8 In 2009, EagleMed sold the helicopter to Wells Fargo Equipment Finance, Inc. who leased it back to EagleMed. EagleMed is an established Oklahoma air ambulance service. It is licensed by the Oklahoma Secretary of State and the Department of Health. It has five Oklahoma "bases," serving the entire state. At the time it purchased the helicopter, EagleMed had two Oklahoma "bases" and eight helicopters. The purchase was specifically for the establishment of its third base with Airbus' alleged knowledge.

¶9 EagleMed operates out of three states, but services five states: Kansas, Oklahoma, Missouri, Arkansas, and Nebraska. The main base in Wichita advertised that it could service the northern part of Oklahoma in less than 24 minutes. Airbus has offered continuous technical support to EagleMed regarding their helicopters, but none of the communication was directed to a base in Oklahoma. All communication was made with the main base in Wichita, even though it is likely that some of the communication regarded helicopters which were located in Oklahoma.

¶10 On August 16, 2013, the flight nurse's family (Denning family) sued Airbus, Airbus SAS, Soloy, and Honeywell for wrongful death, negligence, and products liability in the 141st District Court in Tarrant County, Texas. On April 7, 2014, the pilot's widow intervened alleging similar claims. On June 23, 2014, EagleMed also intervened in the Texas lawsuit, alleging claims for loss of the helicopter and other damages. The flight paramedic filed a separate claim without joining the other plaintiffs. In December of 2014, the defendants in the Texas lawsuit filed counterclaims against the pilot, arguing that the pilot's operational errors caused or contributed to the crash.

¶11 On February 13, 2015, the pilot's widow, EagleMed, and Starr, filed a products liability/negligence lawsuit against Airbus, Honeywell, and Soloy, in the District Court of Oklahoma County, Oklahoma. The same day, the widow and EagleMed filed a notice of non-suit in the Texas action which the Texas Court granted on February 25, 2015.[3] They alleged that venue was proper in Oklahoma, because the accident occurred in Oklahoma County and because the defendants/appellees could properly be sued in Oklahoma County.

¶12 On March 23, 2015, Airbus and Soloy filed motions to dismiss for lack of personal jurisdiction pursuant to 12 O.S. §2012(B)(2)[4] and under the doctrine of forum non conveniens.[5] Honeywell filed a motion to dismiss under the doctrine of forum non conveniens, but it did not raise the defense of personal jurisdiction under 12 O.S. §2012(B)(2), thus waiving the issue.[6] After additional briefings, a hearing was held on May 1, 2015, in which Montgomery's request for additional time to conduct jurisdictional discovery was denied.

¶13 In an order filed May 20, 2015, the trial court granted motions to dismiss for lack of personal jurisdiction to Airbus and Soloy, but it did not make any finding regarding forum non conveniens. The court determined that there was not enough evidence to establish personal jurisdiction and that additional discovery would be unnecessary. The claims against defendant Honeywell were stayed, pending resolution of an appeal.[7] The Court of Civil Appeals affirmed the trial court. We granted certiorari on April 24, 2017.

THE TRIAL COURT DID NOT ERR IN GRANTING THE MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION.

¶14 Airbus and Soloy argue that they have no contacts with Oklahoma which would allow an Oklahoma court to assert jurisdiction over them. The pilot's widow, EagleMed, and Star Indemnity argue that because Airbus and Soloy sold their product to a company that has, and continues to use, millions of dollars worth of their products in Oklahoma. They also argue that because of these sales, Airbus and Soloy should be subject to Oklahoma jurisdiction. The record gives no indication that Airbus continued to earn revenue from this particular helicopter after its initial sale to EagleMed. In fact, at the time of the crash, the helicopter was not even owned by EagleMed.

¶15 In personam jurisdiction is the power to render a binding judgment against a defendant.[8] When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, a court could nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state.[9] However, general jurisdiction has been modified by the United States Supreme Court in Daimler AG v. Bauman, 134 S.Ct. 746, 571 U.S. 20, 187 L.Ed.2d 624 (2014) which reaffirmed that general jurisdictions exists only over a defendant who is at "home" within a state.[10]

¶16 It is undisputed that general jurisdiction does not exist against either defendant in this cause. Even if it were not agreed to be a non-issue, the facts of this cause could not pass the Daimler, supra, test for general jurisdiction. Nevertheless, if a defendant has purposefully directed activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities, specific jurisdiction over a nonresident defendant may exist unless jurisdiction would be unreasonable or would offend the traditional notions of substantial justice and fair play.[11]

¶17 We review dismissal for lack of personal jurisdiction over a non-resident defendant de novo.[12] When in personam jurisdiction is challenged, the jurisdiction over a non-resident defendant cannot be inferred, but instead must affirmatively appear from the trial court record, and the burden of proof in the trial court is upon the party asserting that jurisdiction exists.[13] We canvas the record for proof that the nonresident party has sufficient contacts with the state to assure that traditional notions of fair play and substantial justice will not be offended if this state exercises in personam jurisdiction.[14]

¶18 Personal jurisdiction is a protection granted by the Due Process Clause of the Fourteenth Amendment of the United States Constitution[15] and by the Oklahoma Constitution.[16] Oklahoma's long arm statute for establishing specific jurisdiction is 12 O.S. 2011 §2004(F).[17] It sets the limits of the state's jurisdiction over a nonresident to the outer limits permitted of the Oklahoma and United States Constitutions.[18] Consequently, the outer limits as defined by the United States Supreme Court are relevant to our inquiry.

¶19 Recently, the United States Supreme Court decided Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco, et al., 137 S.Ct. 1772, 582 U.S. __, 198 L.Ed.2d 395 (2017). In Bristol-Myers, the majority of the plaintiffs were not from the state where they filed their lawsuit, nor were they injured in that state. Nevertheless, it does provide the latest specific jurisdiction analysis from the Court. In Bristol-Myers, a group of more than 600 plaintiffs sued the pharmaceutical company over the drug Plavix in California, even though most of the plaintiffs were not California residents [only 86 were California residents].

¶20 The drug company was incorporated in Delaware and headquartered in New York and maintained substantial operations in both New York and New Jersey. The company sells Plavix in California; has five research and laboratory facilities in California; employs about 250 sales representatives in California; and maintains a small state-government advocacy office in Sacramento. However, it did not develop, create a marketing strategy, manufacture, label, package, or work on regulatory approval for Plavix in California. California sales of the drug accounted for only 1% of the company's total revenue for the years 2006 and 2012. The nonresident plaintiffs did not allege they were injured or treated for injuries in California.

¶21 The drug company moved to quash service of summons on the nonresident's claim, but the California Superior Court denied this motion finding that the California courts had general jurisdiction over the drug company. On appeal, the California Court of Appeals determined that California did not have general jurisdiction based on Daimler, supra, but that it did have specific jurisdiction over the nonresidents' claims. The California Supreme Court affirmed and the United States Supreme Court reversed, holding that California lacked specific jurisdiction to entertain the nonresidents' claims.

¶22 In Bristol-Myers, supra, the Court expressly rejected California's "sliding scale approach" which permitted the exercise of specific jurisdiction based on the notion that the more wide ranging the forum contacts, the more readily a connection between the forum contacts and the claim is shown. The Court noted that:

1) there must be an affiliation between the forum and the underlying controversy such as an activity or an occurrence that takes place in the forum State, which subjects the cause to the State's regulation; and

2) an adjudication of issues must derive from, or be connected with, the very controversy that establishes jurisdiction.

¶23 The Court also delineated that the interests to consider begin with the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice. The primary concern which it recognized was the burden on the defendant. The burden on the defendant requires a court to consider the practical problems resulting in litigation in the forum, and also the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question.

¶24 Relying on another case concerning specific jurisdiction, Walden v. Flore, 134 S.Ct. 1115, 571U.S. 12, 188 L.Ed.2d 12 (2013), the Court noted that a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction. Because it was not alleged that the drug company engaged in relevant acts together with its California distributor, or that it was derivatively liable for the distributor's conduct the Court held the requirements of International Shoe Co., v. Washington, 66 S.Ct. 154, 326 U.S. 310, 90 L.Ed 95 (1945) were not satisfied. Because the non-California residents were not attempting to show that the drug they took was distributed to the pharmacies that dispensed to them in California, the fact that the drug company contracted with a California distributor was not enough to establish personal jurisdiction.

¶25 In Walden v. Flore, supra, a Georgia police officer working as a Drug Enforcement Agent (DEA) at a Georgia airport confiscated $97,000.00 in cash that the plaintiffs, California and Nevada residents, were carrying on August 8, 2006. According to the plaintiffs, they were professional gamblers and had been gambling at a casino in Puerto Rico. The Georgia police officer advised the plaintiffs that their funds would be returned if they later proved a legitimate source for the cash. The funds were eventually returned by the DEA in March of 2007.

¶26 The professional gamblers filed a lawsuit against the Georgia police officer in Nevada (one of the gambler's home states). The trial court dismissed the lawsuit on lack of personal jurisdiction. The 9th Circuit Court of Civil Appeals reversed. The Supreme Court determined that personal jurisdiction over the Georgia police officer did not belong to Nevada. The Court noted two important aspects which were necessary for jurisdiction: 1) the relationship between the defendant and the forum State must arise out of contacts that the defendant "himself" creates with the forum State; and 2) "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contact with persons who reside there. While physical presence in the forum is not a prerequisite to jurisdiction, the plaintiff cannot be the only link between the defendant and the forum. The Georgia officer's actions never formed any jurisdictionally relevant contacts with Nevada, therefore, personal jurisdiction in Nevada could not exist.

¶27 In Bristol-Myers, supra, and Walden, supra, the Court, relying on its previous minimum contacts cases, clarified specific jurisdiction analysis and omitted from that analysis any previous "stream of commerce" analysis. [By omitted, we mean the Court neglected to mention it at all, presumptively, at least implicitly, rejecting such analysis.] Our prior precedents worked much like the California "sliding scale" approach which the Court expressly rejected Bristol-Myers, supra. It focused either on the "totality of contacts" between the non-resident defendant[s] and the State of Oklahoma and the resident plaintiff[s], or the nature of the contacts and whether the contact occurred in the "stream of commerce."[19] For example, in Guffey v. Ostonakulov, 2014 OK 6, 321 P.3d 971, after the Oklahoma buyer filed a fraud and consumer protections lawsuit, we addressed whether an Oklahoma district court had in personam jurisdiction over a Tennessee individual and corporation which sold a motor vehicle to an Oklahoma resident through eBay.

¶28 In Guffey, supra, the purchase was not a single, isolated transaction on eBay made by a random seller to an Oklahoma resident. Rather, the seller used eBay as a central and regular aspect of their business which allowed them to reach out and to sell to potential buyers in numerous states. Nor was the particular sale at issue an isolated contact between the Oklahoma buyer and the Tennessee seller. For instance, the seller had reached out to the buyer before the eBay auction ended in an attempt to negotiate a sale outside of the eBay process. Written communications were also exchanged between the buyer and seller's father's office in Oklahoma and the vehicle was subject to a thirty-day warranty. This created a continuing obligation between the Tennessee seller and the Oklahoma buyer, after the vehicle was shipped to Oklahoma to be registered and driven in Oklahoma.

¶29 We said, in a unanimous opinion, that:

¶26 Defendants are involved in the commercial sale of vehicles to numerous states, and eBay is a primary means through which they conduct these sales. Defendants negotiated with Guffey directly over the vehicle eventually sold to her in Oklahoma, warrantied that vehicle while it was to be titled and driven in Oklahoma, and have allegedly engaged in more than one such transaction in this state. The totality of Defendants' contacts with Oklahoma constitute more than sufficient minimum contacts for the exercise of in personam jurisdiction to be reasonable and comport with traditional notions of fair play and substantial justice.

¶30 Our other cases have reached similar results when the contact was directly between the non-resident and the Oklahoma resident.[20] While there may have been some continuing obligations between EagleMed, Airbus, and Soloy regarding warranties, or keeping the aircraft in a safe, working order,[21] there was no direct contact between Airbus and Soloy and the deceased Oklahoma pilot whose widow is the plaintiff in this cause. The only direct contacts appear to be between the non-resident EagleMed and the non-residents Airbus and Soloy which took place in Texas and in Kansas where the aircraft and engine were sold, contracted, and delivered and it appears this contact is insufficient under the teachings of Bristol-Myers, supra, for specific personal jurisdiction to exist. Furthermore, financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State.[22]

¶31 Prior to Bristol-Myers, supra, in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980), the New York resident plaintiffs were involved in a car crash in Oklahoma. The plaintiffs sued the car dealer who sold them their car in New York, arguing that minimal contacts were met because it was foreseeable for a car to be driven across the country, thus submitting the non-resident defendant's to jurisdiction. The Court denied the argument because it was merely fortuitous that a single car sold in New York to New York residents would crash in Oklahoma.[23] 

¶32 However, World-Wide Volkswagen, supra, noted that "the forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."[24] The Court later diverged into two competing tests, in a plurality opinion, for a "stream of commerce" analysis in Asahi Metal Ind., LTD v. Superior Ct. of California, 480 U.S. 103 (1987). In Asahi, the Court agreed on the result that no personal jurisdiction was established, but diverged on which approach to use in reaching that result. [25]

¶33 The two diverging tests from Asahi are the "stream of commerce plus" test from Justice O'Connor's opinion which requires some "[a]dditional conduct of the defendant [that] may indicate an intent or purpose to serve the market or the forum State."[26] Justice Brennan's more lenient view allows jurisdiction when "the regular and anticipated flow of products" reaches the forum state with no additional conduct needed.[27]

¶34 This Court addressed and utilized a stream of commerce analysis in State ex rel. Edmondson v. Native Wholesale Supply, 2010 OK 58, 237 P.3d 199 (NWSI).[28] In NWSI, the State of Oklahoma filed a lawsuit in Oklahoma against a nonresident Canadian-chartered cigarette importer and distributor, Native Wholesale Supply (NWS). NWS moved for dismissal based on lack of personal jurisdiction which the trial court denied. NWS appealed.

¶35 We analyzed the personal jurisdiction issue without formally adopting either the O'Connor or Brennan test. However, we stated that if the "stream of commerce plus" test was satisfied, by definition, Brennan's less stringent test was also satisfied. We held that personal jurisdiction existed because the sheer quantity of cigarettes "for reservation sales only" sold in the state on tribal land was also for sales to the general public of Oklahoma off tribal land. NWS was not an innocent bystander because it reaped hefty financial benefits. The State alleged that over a fifteen-month period more than one hundred million cigarettes worth more than eight million dollars were sold into the Oklahoma market. The volume of cigarettes sold in the state revealed that the Company was part of a distribution channel intentionally to bring their product into the State.

¶36 NWSI established that Justice O'Conner's stricter 'stream of commerce plus' test can be met when a defendant's conduct outside the forum results in their product being placed in the forum and they know and benefit from that placement.[29] However, subsequent, to Bristol-Myers, supra, we must conclude that any "stream of commerce" test applied to Airbus and Soloy products used by EagleMed cannot establish Oklahoma jurisdiction for several reasons:

1) Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco, et al., 137 S.Ct. 1772, 582 U.S. __, 198 L.Ed.2d 395 (2017) requires an affiliation between the forum and the underlying controversy, an activity or an occurrence that takes place in the forum State, which subjects the cause to the State's regulation. The adjudication of issues must derive from, or be connected with, the very controversy that establishes jurisdiction. Accordingly, a "sliding scale" approach, or "totality of the contacts" or "stream of commerce" approach is insufficient to establish specific personal jurisdiction.

2) Pursuant to Walden v. Flore, 134 S.Ct. 1115, 571U.S. 12, 188 L.Ed.2d 12 (2013), a defendant's relationship with a third party, such as EagleMed, is an insufficient basis for jurisdiction.

3) EagleMed's unilateral choice to fly the helicopter into Oklahoma cannot serve as a basis for subjecting Airbus and Soloy to suit in Oklahoma. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result . . . of the unilateral activity of another party or a third person."[30]

Perhaps equally persuasive, is the United States Supreme Court's action two recent cases. In Galier v. Murco Wall Products, Inc., Docket No. 17-733, an Oklahoma Court of Civil Appeals Case,[31] and Simmons Sporting Goods v. Lawson, Docket No., 17-109, an Arkansas Court of Civil Appeals Case,[32] the Court, granted certiorari, vacated the judgment, and remanded the case back to the appellate courts for further consideration in light of Bristol-Myers, supra.

¶37 Oklahoma may have an interest in adjudicating this case. The crash happened in Oklahoma and the helicopter took off from a base in this State. The two people killed were citizens of this State. Most of the harm from this incident occurred in this State, but these facts alone, without Airbus, or Soloy having further direct and specific conduct with this State directly related to the incident giving rise to the injuries, is insufficient for asserting specific personal jurisdiction over them. Furthermore, we cannot see the need for additional jurisdictional discovery in this cause because the "totality of the contacts" or "stream of commerce" is no longer the analysis this Court will use to determine specific personal jurisdiction.

CONCLUSION

¶38 The emergency helicopter industry is not a traditional industry with a traditional manufacturer selling products to masses of consumers. Airbus and Soloy created very specific products but did not aim the products at Oklahoma markets. It sold those products to a company who operated regionally in Oklahoma, Texas, Kansas, Arkansas, Missouri and Nebraska. Nor did they solicit business from Oklahoma markets and Oklahoma residents. Consequently, minimum contacts with the State of Oklahoma were insufficient.

COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT AFFIRMED.

COMBS, C.J., KAUGER, WINCHESTER, REIF, WYRICK, JJ., concur.

GURICH, V.C.J., concurs in result.

EDMONDSON, COLBERT, JJ., dissent.

FOOTNOTES

[1] The Purchase Agreement ¶8 provides in pertinent part:

General (a): "This Purchase Agreement and the rights of the parties hereto shall in every respect be governed by and construed in accordance with the substantive laws of the State of Texas without reference to the laws of any other state or jurisdiction. Buyer hereby irrevocably consents and agrees that any legal proceeding arising out of or in connection with this Agreement or the rights of the parties hereto may be commenced and prosecuted to conclusion in Dallas, Dallas County, Texas. . . .

[2] Soloy's Chief Operating Officer does admit in the past, it has had two customers from Oklahoma. One in 2004 and another from the years 2002 through 2010. It also advertised with trade magazines on a national level, but nothing purposefully directed to Oklahoma.

[3] The remaining counterclaims against the pilot in Texas are stayed pending resolution of this case in speculation that this cause might be dismissed.

[4] Title 12 O.S. 2011 §2012(B) provides in pertinent part:

B. HOW PRESENTED. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

. . .

2. Lack of jurisdiction over the person;
3. Improper venue; ...
[8]. Another action pending between the same parties for the same claim; . . .

[5] Title 12 O.S. 2011 §140.3 provides:

A. If the court, upon motion by a party or on the court's own motion, finds that, in the interest of justice and for the convenience of the parties, an action would be more properly heard in another forum either in this state or outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay, transfer or dismiss the action.
B. In determining whether to grant a motion to stay, transfer or dismiss an action pursuant to this section, the court shall consider:
1. Whether an alternate forum exists in which the action may be tried;
2. Whether the alternate forum provides an adequate remedy;
3. Whether maintenance of the action in the court in which the case is filed would work a substantial injustice to the moving party;
4. Whether the alternate forum can exercise jurisdiction over all the defendants properly joined in the action of the plaintiff;
5. Whether the balance of the private interests of the parties and the public interest of the state predominate in favor of the action being brought in an alternate forum; and
[6]. Whether the stay, transfer or dismissal would prevent unreasonable duplication or proliferation of litigation.

[6] Title 12 O.S. 2011 §2012 (F)(1) provides:

a. if omitted from a motion that raises any of the defenses or objections which this section permits to be raised by motion, or
b. if it is not made by motion and it is not included in a responsive pleading or an amendment thereof permitted by subsection A of Section 2015 of this title to be made as a matter of course. A motion to strike an insufficient defense is waived if not raised as in subsection D of this section.

[7] Pursuant to 12 O.S. 2011 §2012(F), see note 6, supra, Honeywell waived their right to defend on personal jurisdiction.

[8] Guffey v.Ostonakulov, 2014 OK 6, ¶12, 321 P.3d 971; Conoco v. Agrico Chemical Co., 2004 OK 83, ¶16, 115 P.3d 829; Gilbert v. Security Finance Corp. of Oklahoma, Inc., 2006 OK 58, ¶16, 152 P.3d 165.

[9] Helicopters Nacionales de Colombia v. Hall, 104 S.Ct. 1868, 466 U.S. 408, 414-16 & n. 9, 80 L.Ed.2d 404 (1984); World-Wide Volkswagon Corp. v. Woodson,100 S.Ct. 559, 444 U.S. 286, 291, 62 L.Ed.2d 490 (1980).

[10] Daimler AG v. Bauman,134 S.Ct., 571 U.S. 20, 187 L.Ed.2d 624 (2014) involved plaintiffs from Argentina who filed a lawsuit against defendants that no contacts with the forum state of California, other than having a subsidiary incorporated in Delaware with its principal place of business in New Jersey, who distributed its vehicles throughout the United States including California. The Court said at slip op., at 20, discussing the 2011 case of Goodyear Dunlop Tires Operations S.A. v. Brown, 151 S.Ct. 2846, 564 U.S. 915, 180 L.Ed.2d 796 (2011):

. . . Accordingly, the inquiry under Goodyear is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." 564 U. S., at ___ (slip op., at 2). Here, neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there. If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Burger King Corp., 471 U. S., at 472 (internal quotation marks omitted). (Footnotes omitted).

See also, the Court's application of Daimler to a railroad injury brought by North and South Dakota residents in Montana State Court in BNSF Railway Co., v. Tyrrell, 137 S.Ct. 1549, 581 U.S. ___, 198 L.Ed.2d 36 (2017). In BNSF, the Court determined that BNSF was not incorporated or headquartered in Montana and its activity there was not "so substantial and of such a nature as to render the corporation at home in that State."

[11] Mastercraft Floor Covering v. Charlotte Flooring, Inc., 2013 OK 87, ¶12, Hough v. Leonard, 1993 OK 112, ¶7, 867 P.2d 438.

[12] Guffey v. Ostonakulov, 2014 OK 6, ¶10, 321 P.3d 971; Gilbert v. Security Financial Corp., 2006 OK 58, ¶2, 152 P.3d 165; Conoco, Inc. v. Agrico Chemical Co., 2004 OK 83, ¶20, 115 P.3d 829.

[13] Guffey v. Ostonakulov, see note 12, supra; Gilbert v. Security Financial Corp., see note 12, supra; Conoco, Inc. v. Agrico Chemical Co., see note 12, supra.

[14] Guffey v. Ostonakulov, see note 12, supra; Conoco, Inc., v. Arigo Chemical Co., 2004 OK 83, ¶16, 115 P.3d 829.

[15] The U.S. Const. amend 14, §1 provides in pertinent part:

. . . No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or deny to any person within its jurisdiction the equal protection of the laws.

[16] The Okla. Const. art. 2, §2 provides:

All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry.

[17] Title 12 O.S. 2011 §2004(F) provides:

A Court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States.

[18] Title 12 O.S. 2011 §2004(F), note 17, supra. In Mastercraft Floor Covering, Inc., v. Charlotte Flooring, Inc., see note 11, supra at ¶10 and in Hough v. Leonard, see note 11, supra at note ¶7, we noted that this statute was a codification of our holding in Fields v. Volkswagen of America, Inc., 1976 OK 106, ¶6, 555 P.2d 48.

[19] Guffey v. Ostonakulov, see note 12, supra; Mastercraft Floor Coverings, Inc. v. CFI, see note 11, supra; State ex rel. Edmondson v. Native Wholesale Supply, 2010 OK 58, 237 P.3ds 199; Gilbert v. Security Finance Corp of Oklahoma, 2006 OK 58, 152 P.3d 165; Conoco, Inc., v. Agrico Chemical Company, see note 14, supra; Hough v. Leonard, see note 11, supra.

[20] In Mastercraft Floor Coverings, Inc., v. Charlotte Floorings, Inc., see note 11, supra, we held that Oklahoma had jurisdiction over a North Carolina company who had fired an Oklahoma company to lay carpet on a construction project in North Carolina. The contacts involved 30-40 telephone calls, 140 emails, with documents and negotiated contracts emailed to Oklahoma for signature. In Gilbert v. Security Finance Corp of Oklahoma, see note 12, supra, we held that a company engaged in systematic day-to-day Oklahoma contacts so as to meet requirements of both general and specific jurisdiction. However, regarding subsidiary company we noted that "in order to establish jurisdiction under an alter-ego theory, there must be proof of pervasive control by the parent over subsidiary more than what is ordinarily exercised by a parent corporation. We said:

¶20 Addressing only the holding companies, the evidence is that they held Oklahoma defendants' stock, they had some board of directors in common with the Oklahoma defendants, they filed consolidated income tax returns, and CHC signed the management agreement with SFC-S. There is no evidence that the holding companies have any direct contacts with Oklahoma or that they exercise more control over the Oklahoma defendants than that generally exercised by a parent company. The record fails to show the "minimum contacts" necessary for the exercise of in personam jurisdiction over the holding companies, and the holding companies never surrendered to the trial court's in personam jurisdiction. Our finding of a lack of "minimum contacts" is based on the specific facts in this case. On remand, the trial court is instructed to dismiss the holding companies as parties in this action.

[21] This is not to say that Airbus or Soloy owed no duty of care toward the pilot or others. In Hudgens v. Cook Industries, Inc. 1973 OK 145, ¶18, 521 P.2d 813, the Court said:

Where there is foreseeable risk of harm to others unless precautions are taken, it is the duty of one who is regularly engaged in a commercial enterprise which involves selection of motor carriers as an integral part of the business, to exercise reasonable care to select a competent carrier. Failure to exercise such care may create liability on the part of the employer for the negligence of that carrier.

[22] World-Wide Volkswagen Corp. v. Woodson, see note 9 supra at 299.

[23] World-Wide Volkswagen Corp. v. Woodson, see note 9 supra.

[24] World-Wide Volkswagen Corp. v. Woodson, see note 9 supra at 297-98.

[25] Asahi Metal Ind., LTD v. Superior Ct. of California, 480 U.S 102 (1987).

[26] Asahi Metal Ind., LTD v. Superior Ct. of California, see note 25, supra at 112.

Justice O'Connor, and three other justices, supported the 'stream of commerce plus' test.

[27] Asahi Metal Ind., LTD v. Superior Ct. of California, see note 25, supra at 116-117.

Justice Brennan, and three other justices, supported the 'stream of commerce' test.

We also noted another writing in Asahi stating:

¶16 Still another writing in Asahi, authored by Justice Stevens, declared that, although it was unnecessary to reach the question of minimum contacts, it was their considered opinion that a regular course of dealing that results in deliveries of a large quantity of a product annually over a period of several years would satisfy the "purposeful availment" requirement. Because Justice Stevens could discern "no unwavering line . . . between 'mere awareness' that a component will find its way into the forum State and 'purposeful availment' of the forum's market," he advocated that the volume, the value, and the inherent dangerousness of the product be taken into account in determining whether a defendant's conduct amounted to purposeful availment of the forum. (Citations omitted)

[28] We also decided State ex rel. Pruitt v. Native Wholesale Supply, 2014 OK 49, 338 P.3d 613 (Native Wholesale Supply II), which did not involve the question of personal jurisdiction, but we did reiterate what we had previously said in Native Wholesale Supply I regarding personal jurisdiction.

[29] The Court said:

¶24 This is not a case where the defendant is merely aware that its product might be swept into this State and sold to Oklahoma consumers. The sheer volume of cigarettes sold by Native Wholesale Supply to wholesalers in this State shows the Company to be part of a distribution channel for Seneca cigarettes that intentionally brings that product into the Oklahoma marketplace. Native Wholesale Supply is not a passive bystander in this process. It reaps a hefty financial reward for delivering its products into the stream of commerce that brings it into Oklahoma. To claim, as Native Wholesale Supply does, that it does not know, expect, or intend that the cigarettes it sells to Muscogee Creek Nation Wholesale are intended for distribution and resale in Oklahoma is simply disingenuous. (Citations omitted)

¶25 In short, Native Wholesale Supply does not "merely set its products adrift on a stormy sea of commerce which randomly [sweeps] the products into" Oklahoma. They arrive here by the purposeful collective acts of the Company and the tribal wholesalers with whom it does business. We hence hold that the minimum contacts segment of due process analysis is satisfied.

[30] Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984); Kulko v. Cal. Superior Court, 436 U.S. 84, 93-94 (1978); Hanson v. Denckla, 357 U.S. 235, 253 (1958)("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State"); Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd., 385 F.3d 1291, 1297 (10th Cir. 2004) ("[M]ere foreseeability that a customer will unilaterally move a chattel into a given state does not create jurisdiction over the vendor of the chattel." (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980))).

[31] On February 20, 2018, the United States Supreme Court granted certiorari, vacated and remanded Galier v. Murco Wall Products to the Oklahoma Court of Civil Appeals with instructions to reconsider in light of Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco, et al., 137 S.Ct. 1772, 582 U.S. __, 198 L.Ed.2d 395 (2017). In Galier, the Court applied Guffey v. Ostonakulov, 2014 OK 6, 321 P.3d 971 "totality of the contacts" analysis. The defendant was a Texas corporation with its place of business in Fort Worth and it sold tens of thousands of sales in a two-year period beginning in 1972 to Oklahoma markets. In the 1970's, it had eight purchases in Lawton, Oklahoma City, Stonewall, and Duncan and it entered into an agreement with an Oklahoma company who applied its label to one of the defendant's products for resale.

[32] On October 2, 2017, the United States Supreme Court granted certiorari, vacated and remanded Simmons Sporting Goods v. Lawson to the Arkansas Court of Civil Appeals with instructions to reconsider in light of Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco, et al., 137 S.Ct. 1772, 582 U.S. __, 198 L.Ed.2d 395 (2017). In Simmons, the defendant was a Louisiana retailer who advertised in Arkansas and sought to draw Arkansas residents to its store. It also hosted a "Big Buck Contest" in Arkansas. The Arkansas appellate court looked to whether the defendant's conduct connected itself with the State of Arkansas through direct solicitation of Arkansas residents.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1993 OK 112, 867 P.2d 438, 64 OBJ 2836, Hough v. Leonard
Discussed
 1973 OK 145, 521 P.2d 813, HUDGENS v. COOK INDUSTRIES, INC.
Discussed
 2004 OK 83, 115 P.3d 829, CONOCO INC. v. AGRICO CHEMICAL COMPANY
Discussed at Length
 2006 OK 58, 152 P.3d 165, GILBERT v. SECURITY FINANCE CORP OF OKLAHOMA, INC.
Discussed at Length
 2010 OK 58, 237 P.3d 199, STATE ex rel. EDMONDSON v. NATIVE WHOLESALE SUPPLY
Discussed at Length
 2013 OK 87, 313 P.3d 911, MASTERCRAFT FLOOR COVERING, INC. v. CHARLOTTE FLOORING, INC.
Cited
 2014 OK 6, 321 P.3d 971, GUFFEY v. OSTONAKULOV
Discussed at Length
 1976 OK 106, 555 P.2d 48, FIELDS v. VOLKSWAGEN OF AMERICA, INC.
Discussed
 2014 OK 49, 338 P.3d 613, STATE ex rel. PRUITT v. NATIVE WHOLESALE SUPPLY
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 140.3, Stay, Transfer, or Dismissal of an Action Under Forum Non Conveniens
Cited
 12 O.S. 2004, 12 O.S. 2004, Process
Discussed at Length
 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA