GALIER v. MURCO WALL PRODUCTS
2022 OK 85
Case Number: 114175
Decided: 10/25/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 85, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

MICHAEL D. GALIER, Plaintiff/Appellee/Respondent,
v.
MURCO WALL PRODUCTS, INC., Defendant/Appellant/Petitioner,
and
WELCO MANUFACTURING CO. and RED DEVIL CORPORATION, Defendants.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION I

¶0 Michael Galier brought a negligence and products liability action against Defendant/Appellant/Petitioner Murco Wall Products, Inc., a Texas manufacturer, alleging exposure to Murco's products caused him to contract mesothelioma. The Oklahoma County District Court denied Murco's motion to dismiss for lack of personal jurisdiction and, following a jury trial, granted judgment to Galier. The Court of Civil Appeals affirmed. This Court denied certiorari. The United States Supreme Court granted certiorari, vacated the Court of Civil Appeals' decision, and remanded for reconsideration in light of Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, 137 S. Ct. 1773 (2017). The Court of Civil Appeals reaffirmed the district court. We previously granted certiorari to address whether the Court of Civil Appeals properly found that Oklahoma possesses specific personal jurisdiction over Murco.

AFFIRMED.

Clyde A. Muchmore, Harvey D. Ellis, Jr., Cullen D. Sweeney, Crowe & Dunlevy, Oklahoma City, Oklahoma, and Gregory L. Deans (pro hac vice) and Katherine H. Stepp (pro hac vice), Deans & Lyons, LLP, Dallas, Texas, for Defendant/Appellant/Petitioner, Murco Wall Products, Inc.

Steven T. Horton, Horton Law Firm, Oklahoma City, Oklahoma, and Jessica M. Dean (pro hac vice), Charles W. Branham, III (pro hac vice), and Lisa White Shirley (pro hac vice), Dean Omar Branham & Shirley, Dallas, Texas, for Plaintiff/Appellee/Respondent, Michael D. Galier.

OPINION

DARBY, C.J.,

¶1 Oklahoma resident, Michael Galier was exposed to asbestos in Oklahoma in the 1970s. At that time, Murco sold asbestos joint compound into Oklahoma. In 2012, Galier was diagnosed with mesothelioma. This cause arises from that injury. The question before this Court is whether Oklahoma possesses specific personal jurisdiction over the nonresident Defendant, Murco. We answer in the affirmative.

I. BACKGROUND

¶2 Murco is a Texas corporation with its principal place of business in Fort Worth. Murco started making drywall joint compound in 1971. The company began with three to five employees and by 1976 had ten to twenty employees. Murco maintains limited records from its sales during the 1970s. Murco's extant records note each sale by the number of units sold, rather than purchase price. We therefore use the term "unit" throughout this opinion as a generic reference to the amount of joint compound packaged in one container; depending on the product, a unit refers to a bag between 25 and 50 pounds, a 4 gallon box, or 5 gallon bucket.

¶3 Murco first sold drywall joint compound to Oklahoma customers in 1972. During its early years, eight of Murco's eighty-five customers were located in Oklahoma. See ROA 8255, Vol. II PM Tr. of Jury Trial 109:11(May 5, 2015). From 1972 to 1973, Murco sold at least 245,599 units of product. ROA 81. Of those, 232,516 units contained asbestos. Id. And from 1972 to 1973, they sold at least 24,951 units of products containing asbestos to Oklahoma. ROA 82-89. From 1972 to 1974, that number jumps to a total of over forty thousand units of asbestos joint compound that Murco sold among eight different customers with Oklahoma addresses. See ROA 266-77. For one of those customers, Flintkote of Oklahoma City (a distributor), Murco packaged its asbestos-containing product two ways. Some were packaged with only Murco's label, and some were packaged with only the customer's private "Flintkote" label; both were available for resale in Oklahoma City.Id.

¶4 In 1977, Murco's founder and president wrote a letter to the Consumer Products Safety Commission which stated: "Murco has one salesman, covering about a 300 mile radius of Fort Worth." Def.'s Trial Ex. 6. Murco's self-declared sales radius included most of Oklahoma. After 1978, Murco discontinued using asbestos in its drywall joint compound.

¶5 Throughout the 1970s, Galier saw Murco's name on products at various construction sites. From 1971 to 1975, Galier visited many of his father's building plots around Moore, Oklahoma, to play or help clean up after subcontractors.

¶6 In March 2012, doctors diagnosed Galier with mesothelioma following an unrelated surgery and biopsy, performed in Oklahoma.

II. PROCEDURAL HISTORY

¶7 On November 1, 2012, Galier sued Murco under theories of negligence and products liability, alleging he was harmed by exposure to Murco's products.

¶8 The district court denied Murco's motion, ruling Oklahoma had general jurisdiction. See Tr. of 2d Mot. Hr'g 32-33 (June 21, 2013). After a two-week trial in May 2015, the jury found that Murco was forty percent responsible for Galier's injury and awarded damages. The district court granted judgment to Galier on July 6, 2015.

¶9 Murco appealed and the Court of Civil Appeals affirmed the district court on February 3, 2017. This Court denied certiorari on June 19, 2017. On the same day, the United States Supreme Court issued Bristol-Myers Squibb Co. v. Superior Court of California, San Franciso County, 582 U.S. ------, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (June 19, 2017), clarifying specific personal jurisdiction. Murco petitioned the United States Supreme Court for certiorari on the issue of personal jurisdiction, which the Court granted on February 3, 2018. The United States Supreme Court vacated the Court of Civil Appeals decision and remanded the case for reconsideration in light of the newly issued Bristol-Myers opinion.

¶10 Following remand, the Court of Civil Appeals determined that the Supreme Court did not intend "to establish a general rule that a plaintiff must present evidence tracing the path of an allegedly dangerous product from manufacturer to end user in order to establish specific personal jurisdiction." COCA Op. ¶ 21, July 19, 2018. COCA stated that it was not persuaded that Galier needed to present proof to the degree of specificity urged by Murco and further stated that Murco's products "did not arrive in the forum by chance or the random flow of commerce." See id., at ¶¶ 20, 22. The court noted that Murco "desired to exploit a feasible market," had "significant sales of its asbestos joint compound to Oklahoma customers," "considered shipping costs[,] and then purposefully targeted its asbestos joint compound into Oklahoma because it was within its calculated profitability zone." Id., at ¶ 22. COCA concluded by explicitly finding that Oklahoma properly exercised specific personal jurisdiction over Murco and affirming the district court again. Id., at ¶¶ 25, 72. We granted certiorari.

¶11 Murco argues that the Court of Civil Appeals acknowledged Bristol-Myers and Montgomery v. Airbus Helicopters, 2018 OK 17414 P.3d 824 unless the plaintiff can show his claimed injury arises directly from those contacts which the nonresident purposefully created in the forum. Murco emphasizes that Galier provided no evidence to show where or how any of Murco's sales contacts occurred, only that Murco had sales to third-party Oklahoma customers. Further, Murco postulates that the reference to a salesperson with a territory inclusive of Oklahoma offers no proof that this unidentified person ever created a relevant contact in Oklahoma, nor for that matter, provides any information regarding the salesperson's actions, or whether he or she ever set foot in Oklahoma, or created any sale in the forum. As a result, Murco argues that the injury did not arise out of its forum contact in order to permit Oklahoma to assert specific personal jurisdiction over it in this case. In response, Galier argues that Murco's sales ledger from 1972 to 1973 demonstrated Murco sold its products to Oklahoma customers and knew such customers would ultimately sell to subcontractors or other Oklahoma residents down the line.

III. STANDARD OF REVIEW

¶12 A trial court's determination of personal jurisdiction is a question of law, which we review de novo. Montgomery, 2018 OK 17State ex rel. Edmondson v. Native Wholesale Supply, 2010 OK 58237 P.3d 199 We search the record for proof that the nonresident party has sufficient contacts with this state to assure that traditional notions of fair play and substantial justice will not be offended if this state exercises in personam jurisdiction. Montgomery, 2018 OK 17

IV. ANALYSIS

¶13 "To establish personal jurisdiction over a non-resident defendant, both the State's long-arm statute and the requirements of federal due process must be satisfied." Native Wholesale Supply, 2010 OK 58Ibid.; 12 O.S. Supp. 2017, § 2004World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490 (1980).

¶14 Due process requires that a nonresident defendant possess "certain minimum contacts" with the forum such that the "maintenance of the suit" is "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and substantial justice" in order to "subject a defendant to a judgment in personam." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316--17, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (internal citation omitted). The United States Supreme Court has long focused on the nature and extent of "the defendant's relationship to the forum State" when applying that formulation. Bristol-Myers, 137 S. Ct., at 1779. As such, the United States Supreme Court has recognized two types of personal jurisdiction: general and specific. See Goodyear Dunlop Tires Operations, S. A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011).

¶15 A state court may exercise general jurisdiction when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires, 564 U.S., at 919. For a corporation, the "paradigm" bases for general jurisdiction are its place of incorporation and principal place of business. Daimler AG v. Bauman, 571 U.S. 117, 137, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014).

¶16 Specific jurisdiction may be exercised over defendants who are less intimately connected with the state, but only as to a narrower class of claims. Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct., 592 U.S. ----, 141 S. Ct. 1017, 1024, 209 L. Ed. 2d 225 (2021). The defendant must perform "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958).

The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). They must show that the defendant deliberately "reached out beyond" its home--by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. Walden v. Fiore, 571 U.S. 277, 285, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) (internal quotation marks and alterations omitted).

Ford Motor, 141 S. Ct., at 1025. The act by which the nonresident defendant purposefully avails himself of the privilege of conducting activities in Oklahoma, "may be shown by circumstances from which such fact may be reasonably inferred." Crescent Corp. v. Martin, 1968 OK 95443 P.2d 111see also Marathon Battery Co. v. Kilpatrick, 1965 OK 212418 P.2d 900

¶17 Murco contends that even though it actively sold asbestos joint compound to Oklahomans for years, Oklahoma lacks personal jurisdiction over them. Murco further claims that Galier failed to trace the Murco asbestos joint compound that he was injured by, in Oklahoma, to one of the documented sales of Murco product to Oklahoma customers. We do not agree that Galier's burden is so high because the United States Supreme Court has made it clear that the law of personal jurisdiction does not require a "tracing" as described by Murco.

¶18 Murco's contacts with Oklahoma were not random, isolated, or fortuitous. Rather, Murco chose to reach out beyond Texas and deliberately exploit the market in Oklahoma by selling over twenty-four thousand units of harmful asbestos joint compound to numerous Oklahoma customers over the course of two years. Murco also worked with a local Oklahoma company, Flintkote, to place Flintkote's label on Murco's asbestos joint compound for resale in Oklahoma. Although Galier could not produce evidence of negotiations for that contact, circumstances evince that the custom labeling was purposefully directed towards Oklahoma. Murco later disclosed its intent to sell its product to the majority of the state of Oklahoma when it purposefully assigned to one salesperson an area of Oklahoma from the southern border to within fifteen miles of Kansas.

¶19 A state may hold a nonresident company "to account" for related misconduct "[w]hen (but only when) a company 'exercises the privilege of conducting activities within a state'--thus 'enjoy[ing] the benefits and protection of [its] laws.'" Ford Motor, 141 S. Ct., at 1025 (alterations in original). This doctrine "provides defendants with 'fair warning'--knowledge that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign.' A defendant can thus 'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts." Ibid. (alterations in original) (citations omitted). During the years of evidenced sales into Oklahoma, Murco enjoyed the benefits and protection of our laws--"the enforcement of contracts, the defense of property, the resulting formation of effective markets." See id., at 1029--30. Murco's continued sales into Oklahoma for several years made it foreseeable that Murco should reasonably anticipate being haled into court here. See World-Wide Volkswagen, 444 U.S., at 297; see also Ford Motor, 141 S. Ct., at 1030. Murco could have chosen to not avail itself of the privilege of conducting activities within Oklahoma to avoid potential liability if it was concerned the risks were too great. See World-Wide Volkswagen, 444 U.S., at 297; see also Ford Motor, 141 S. Ct., at 1030. But Murco chose to exploit the market for its product in this State, and it is not unreasonable to subject Murco to suit now that its merchandise was the source of injury in Oklahoma to an Oklahoma resident. See World-Wide Volkswagen, 444 U.S., at 297. Perhaps even more than Murco's sales to subcontractors, Murco's sales relationship with Flintkote, wherein Murco sold its normal product and also went the extra mile to custom label its product with a Flintkote label for resale in Oklahoma--clearly not a passive sale--shows an intent on the part of Murco to avail itself of the benefits of this forum.

¶20 Even when the defendant has purposefully availed himself of the state, the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum in order for the state to exercise jurisdiction. Bristol-Myers, 137 S. Ct., at 1780 (quoting Daimler, 571 U.S., at 127) (alterations omitted). Murco's argument that Galier must trace the exact product he was injured by from Murco's plant in Texas to the point of exposure in Oklahoma appears to be based on a misinterpretation of Montgomery and Bristol-Myers.

¶21 Montgomery involved a Texas defendant who sold a helicopter to a Kansas company. 2018 OK 17414 P.3d 824Id., at ¶ 3, 414 P.3d, at 826. The helicopter was delivered to the Kansas company in Texas. Id., at ¶ 5, 414 P.3d, at 826. This Court found that the Kansas company's sua sponte act of bringing the helicopter into Oklahoma was not a basis for Oklahoma assuming personal jurisdiction over the Texas company. Id., at ¶ 36, 414 P.3d, at 834.

¶22 In Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, the United States Supreme Court stated that the nonresident plaintiffs had not cited any evidence to show how the pills they took were distributed to the pharmacies which sold them the pills. 137 S. Ct. 1773, 1783, 198 L. Ed. 2d 395 (2017). Bristol-Myers involved resident and nonresident plaintiffs with similar claims against a nonresident defendant. The nonresident plaintiffs were not prescribed pills in the forum, did not purchase pills in the forum, did not ingest pills in the forum, and were not injured by pills in the forum. The Court found that the "mere fact that other plaintiffs were prescribed, obtained, and ingested [pills in the forum]--and allegedly sustained the same injuries as did the nonresidents--does not allow the State to assert specific jurisdiction over the nonresidents' claims." Bristol-Myers, 137 S. Ct., at 1781. The nonresident plaintiffs showed zero connection of their own to the forum. The Court noted that "What is needed--and what is missing here--is a connection between the forum and the specific claims at issue." Bristol-Myers, 137 S. Ct., at 1781. The United States Supreme Court "found jurisdiction improper in Bristol-Myers because the forum State, and the defendant's activities there, lacked any connection to the plaintiffs' claims." Ford Motor, 141 S. Ct., at 1031.

¶23 Galier is a resident of Oklahoma. He was exposed to the defective product in Oklahoma. He suffered injuries from the product in Oklahoma. In sum, Galier "brought suit in the most natural State--based on an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that t[ook] place' there." See Ford Motor, 141 S. Ct., at 1031 (quoting Bristol-Myers, 137 S. Ct., at 1781). Murco admits that it had contacts with Oklahoma. Murco essentially questions whether those contacts are related enough to Galier's suit.

¶24 Recently, the United States Supreme Court clarified in Ford Motor Co. v. Montana Eighth Judicial District, the type of connection required and elucidated the meaning of the phrase "arise out of or relate to." See Ford Motor, 141 S. Ct. 1017. The Supreme Court clarified that "None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." Ford Motor, 141 S. Ct., at 1026. The Court explained that the first part of the arise out of or relate to standard "asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." Ford Motor, 141 S. Ct., at 1026. The Court noted that

indeed, [it] has stated that specific jurisdiction attaches in cases identical to the ones here--when a company like Ford serves a market for a product in the forum State and the product malfunctions there. In World-Wide Volkswagen, the Court held that an Oklahoma court could not assert jurisdiction over a New York car dealer just because a car it sold later caught fire in Oklahoma. 444 U.S., at 295, 100 S.Ct. 580. But in so doing, we contrasted the dealer's position to that of two other defendants--Audi, the car's manufacturer, and Volkswagen, the car's nationwide importer (neither of which contested jurisdiction):

"[I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." Id., at 297, 100 S.Ct. 580.

Or said another way, if Audi and Volkswagen's business deliberately extended into Oklahoma (among other States), then Oklahoma's courts could hold the companies accountable for a car's catching fire there--even though the vehicle had been designed and made overseas and sold in New York. For, the Court explained, a company thus "purposefully avail[ing] itself " of the Oklahoma auto market "has clear notice" of its exposure in that State to suits arising from local accidents involving its cars. Ibid. And the company could do something about that exposure: It could "act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are [still] too great, severing its connection with the State." Ibid.

Ford Motor, 141 S. Ct., at 1027.

¶25 Here, Murco's sales to Oklahoma customers were not isolated, but rather related to Murco's efforts to serve the market for asbestos joint compound in Oklahoma. Murco deliberately extended its business into Oklahoma, purposefully availing itself of Oklahoma's market. Murco's contacts with Oklahoma regarded only the sale of their drywall product. Galier's cause of action related to those contacts. The cases do not require a direct link between Murco's sales to Oklahoma buyers and Galier's exposure to the asbestos.

¶26 Even when the defendant has purposefully availed himself of the forum and the case arises out of or relates to those contacts, the court must still consider a variety of "reasonableness" interests to determine if personal jurisdiction is present. World-Wide Volkswagen, 444 U.S., at 292. These gestalt factors include the burden on the defendant to litigate there, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. Ibid.; Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty., 480 U.S. 102, 113, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987).

¶27 The burden on Murco to defend in Oklahoma is minimal. The trial occurred within Murco's own chosen radius for conducting business sales. Oklahoma has a substantial interest in adjudicating this case; Oklahoma has an interest in protecting its citizens, and the exposure and resulting diagnosis both occurred in Oklahoma to an Oklahoma resident. Galier's interest in convenient relief is also substantial as he lives in Oklahoma and he was injured in Oklahoma. Further, the judicial system's interest in efficient resolution of the controversy demands upholding the ruling on personal jurisdiction as re-starting this litigation in Texas would be an unwarranted drain on their judicial system.

V. CONCLUSION

¶28 For all the reasons we have given, the connection between Galier's claim and Murco's sales to Oklahomans--or otherwise said, the "relationship among the defendant, the forum, and the litigation"--supports specific jurisdiction. See Walden v. Fiore, 571 U.S. 277, 284, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014) (internal quotation marks omitted). The judgment of the Court of Civil Appeals is vacated and the trial court is affirmed.

AFFIRMED.

Darby, C.J., Kane, V.C.J., Winchester, Edmondson, Gurich, Rowe, Kuehn (by separate writing), JJ. and Lewis, S.J., concur;
Kauger, J., recused;
Combs, J., disqualified.

 

FOOTNOTES

The records for Town Craft Homes, Galier's father's company, are nonextant due to a tornado; so there is no record of any worker it hired, product it used, or location where it may have purchased any building materials.

Galier's exposure to asbestos was a fact question the jury answered in Galier's favor and is not an issue before this Court.

12 O.S. Supp. 2017, § 2004

 BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558, 198 L. Ed. 2d 36 (2017).

 

 

KUEHN, J., SPECIALLY CONCURRING:

¶1 I agree with the Majority that specific personal jurisdiction lies here. Murco's minimum contacts with Oklahoma establish that it purposefully availed itself of the Oklahoma forum, and there is sufficient connection between those contacts and the cause of action to satisfy the requirement that the suit arises from or relates to Murco's activities within the forum. Ford Motor Co. v. Montana Eighth Judicial Dist. Ct., 592 U.S. ___, 141 S.Ct. 1017, 1026 (2021); Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty., 582 U.S. __, 137 S.Ct. 1773, 1780 (2017).

¶2 The Majority extensively quotes language from Ford involving the phrase "arises from or relates to." All the Justices in Ford agreed that, no matter how one reads that phrase, its requirement was met. The same is true of this case. I would reserve discussion of this phrase for a case where any possible jurisprudential distinction between and "arise" and "relate" would affect the outcome.

¶3 However, I tend to agree with Justice Gorsuch's broad observation in Ford that, given the rise of national and multinational corporations and the Internet, it may be time to reexamine the overall test for corporate jurisdiction. Ford, 141 S.Ct. at 1038 (Gorsuch, J., concurring). In my view, we can resolve most of these disputes by using common sense: if you bring your toys to the sandbox, you play by the sandbox rules. If a corporation purposefully avails itself of a state forum, and if the plaintiff or injury is connected to that forum, then the corporation is subject to suit there. For example, Corporation actively does business in Oklahoma, Kansas, and Nevada. Plaintiff is an Oklahoma citizen who crosses the border to Kansas, and buys and is injured by Corporation's product there. Under sandbox rules, Plaintiff may sue Corporation in Oklahoma, where Plaintiff lives and Corporation does business, or in Kansas, where Corporation does business and Plaintiff was injured. But Plaintiff can't sue in Nevada; neither Plaintiff nor the injury have any connection to that forum. I believe that this captures the essence of both Ford and Bristol-Myers.