BARFELL v. FREEMAN HEALTH SYSTEM AND GULSHAN UPPAL, M.D., et al.
2025 OK 61
Case Number: 122045
Decided: 09/30/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 61, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

WHITNEY BARFELL, Plaintiff/Appellant/Petitioner,
v,
FREEMAN HEALTH SYSTEM and GULSHAN UPPAL, M.D., Defendants/Appellees/Respondents,
and
INTEGRIS HEALTH, INC.; BAPTIST HEALTHCARE OF OKLAHOMA, LLC; BAPTIST HEALTHCARE OF OKLAHOMA, INC.; INTEGRIS; RURAL HEALTH, INC.; INTEGRIS MIAMI HOSPITAL; INTEGRIS BAPTIST REGIONAL HEALTH CENTER AUXILIARY, INC.; SEAN McCREADY, D.O.; CHET D.WILSON, D.O.; MINDY McBRIEN, APRN-CNP; INTEGRIS AMBULATORY CARE CORP.; JAMES LUNSFORD, D.O.; ALETA FOX, P.A.; SHANTRA NEUHRING, D.O.; DANIEL TRAUM, D.O.; and ELAINE MADER, M.D., Defendants.

ON WRIT OF CERTIORARI TO
THE COURT OF CIVIL APPEALS, DIVISION III

¶0 The Petitioner filed suit alleging certain healthcare providers acted negligently in providing medical care to her. The district court granted a motion to dismiss for two of the providers finding it lacked personal jurisdiction over them. The Petitioner appealed and the Oklahoma Court of Civil Appeals affirmed. We previously granted certiorari. We vacate the opinion of the Oklahoma Court of Civil Appeals, reverse the Judgment of the district court, and remand for further proceedings.

COURT OF CIVIL APPEALS OPINION VACATED; 
TRIAL COURT ORDER AFFIRMED IN PART AND REVERSED IN PART;
REMANDED FOR FURTHER PROCEEDINGS.

Lindsay N. Kistler, KISTLER LEGAL GROUP PLLC, Oklahoma City, Oklahoma, for Plaintiff/Appellant/Petitioner.

Nathan E. Clark, RHODES, HIERONYMUS, JONES, TUCKER & GABLE, P.L.L.C, Tulsa, Oklahoma, for Defendants/Appellees/Respondents.

COMBS, J.:

¶1 The Plaintiff/Appellant/Petitioner, Whitney Barfell (Barfell/Petitioner), filed suit claiming the named Defendants negligently provided medical care to her. The Respondents, Freeman Health System (FHS) and Gulshan Uppal, M.D. (Dr. Uppal) (collectively Respondents) moved to dismiss the action for want of personal jurisdiction. The District Court of Ottawa County, State of Oklahoma (district court) granted the motion to dismiss. On appeal, the Oklahoma Court of Civil Appeals (COCA), affirmed the decision. We previously granted certiorari to review the COCA decision. 

I. FACTS AND PROCEDURAL HISTORY

¶ 2 According to Barfell's First Amended Petition, on April 8, 2021, approximately two months after giving birth, Barfell went to the Integris Miami Hospital in Oklahoma with complaints of a frontal headache. The headache worsened and between April 11th through the 15th she went to various providers in Oklahoma seeking relief. In addition, on April 15, 2021, she went from Oklahoma to Joplin, Missouri, seeking help from Defendant/Appellee/Respondent Freeman Health System (FHS/Respondent). Providers at FHS treated her and thereafter referred her to Freeman Neurology Clinic in Joplin, Missouri, where Defendant/Appellee/Respondent Dr. Gulshan Uppal (Dr. Uppal/Respondent) treated her on April 21, 2021. On the same day she went to Integris Miami Hospital where she also received treatment and was discharged. The next day, April 22, 2021, she went back to Integris Miami Hospital with complaints of a headache and dizziness. She was treated and discharged. Later that day, she called Dr. Uppal from her home in Oklahoma advising him that his treatments had done nothing to relieve her symptoms. She alleged he advised her to give it a few days and complete her imaging work. On April 24, 2021, Barfell was experiencing weakness and numbness in her leg. She went back to Integris Miami Hospital and was diagnosed and treated for generalized weakness and discharged. That same day she went back to FHS in Joplin, Missouri. FHS performed a CT scan. She was diagnosed as having Dural Venous Sinus Thrombosis, Hydrocephalus, and an altered mental state. She was transferred to the neurocritical care unit at KU Medical Center in Kansas City, Kansas. Her doctor there noted on April 26, 2021, that she was not responding to commands and had an elevated intracranial pressure, among other symptoms, which led him to perform a "thrombectomy emergently." She was transported on May 14, 2021, to a long-term acute care hospital. Upon her discharge, her mental status remained poor, and she developed Paroxysmal Sympathetic Hyperactivity.

¶3 On November 7, 2022, Barfell filed a lawsuit in the District Court of Ottawa County, State of Oklahoma, alleging the various healthcare-provider Defendants had negligently diagnosed, treated, and discharged her from their care. She later amended her petition on February 27, 2023, to include FHS, Dr. Uppal, and one other doctor. The Respondents filed a motion to dismiss pursuant to 12 O.S.2021, § 201212 O.S.2021, § 994

¶4 Barfell appealed the Judgment, and the matter was assigned to COCA. On July 26, 2024, COCA affirmed the district court's Judgment. Barfell then petitioned this Court for a writ of certiorari, which we previously granted on March 31, 2025.

II. STANDARD OF REVIEW

¶5 A defendant challenging in personam jurisdiction has an initial procedural burden to raise the facts challenging in personam jurisdiction. Guffey v. Ostonakulov, 2014 OK 6321 P.3d 971abrogated on other grounds by Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty., 582 U.S. 255 (2017), as recognized in Montgomery v. Airbus Helicopters, Inc., 2018 OK 17414 P.3d 824Id. Thereafter, the party asserting jurisdiction has the burden of proof to support the existence of jurisdiction. This is typically done in a response to the motion to dismiss with accompanying affidavit(s). Id., 321 P.3d at 974--75. A trial court's determination of personal jurisdiction is a question of law, which we review de novo. Montgomery, 2018 OK 17in personam jurisdiction. Id. 

III. ANALYSIS

¶6 The question before this Court is whether the State of Oklahoma has personal jurisdiction over the Respondents in order to hear the claims of the Petitioner. In making that determination we must find that both the State's long-arm statute and the requirements of federal due process are satisfied. Galier v. Murco Wall Products, Inc., 2022 OK 85528 P.3d 293State ex rel. Edmondson v. Native Wholesale Supply, 2010 OK 58237 P.3d 19912 O.S.Supp.2022, § 2004Galier, 2022 OK 85Int'l Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945)). These contacts must demonstrate that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice. Id.

¶7 The United States Supreme Court recognizes two types of personal jurisdiction, i.e., "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." Ford Motor Co. v. Mont. 8th Jud. Dist. Ct., 592 U.S. 351, 358 (2021). In the present matter, Barfell is claiming the State of Oklahoma has specific jurisdiction over the Respondents. The Ford Court discussed in length what constitutes specific jurisdiction:

Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant, we have said, must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). They must show that the defendant deliberately "reached out beyond" its home--by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. Walden v. Fiore, 571 U.S. 277, 285, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) (internal quotation marks and alterations omitted). Yet even then--because the defendant is not "at home"--the forum State may exercise jurisdiction in only certain cases. The plaintiff 's claims, we have often stated, "must arise out of or relate to the defendant's contacts" with the forum. Bristol-Myers, 582 U. S., at --------, 137 S.Ct., 1780 (quoting Daimler, 571 U.S., at 127, 134 S.Ct. 746; alterations omitted); see, e.g., Burger King, 471 U.S., at 472, 105 S.Ct. 2174; Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); International Shoe, 326 U.S., at 319, 66 S.Ct. 154. Or put just a bit differently, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" Bristol-Myers, 582 U. S., at -------- - --------, --------, 137 S.Ct., at 1780 (quoting Goodyear, 564 U.S., at 919, 131 S.Ct. 2846).

Ford, 592 U.S. at 359--60. "The act by which the nonresident defendant purposefully avails himself of the privilege of conducting activities in Oklahoma, 'may be shown by circumstances from which such fact may be reasonably inferred.'" Galier, 2022 OK 85Crescent Corp. v. Martin, 1968 OK 95443 P.2d 111

¶8 In Ford, the Court reviewed two separate cases where a person was injured by a Ford Motor Company (Ford) manufactured vehicle. In both cases, suit was filed against Ford where the injuries took place--one in Minnesota and one in Montana. Ford moved to dismiss each action for lack of personal jurisdiction. The trial courts in each state denied the motions and both state supreme courts affirmed the denials, and the U.S. Supreme Court granted Ford petition for writ of certiorari. Ford asserted the proper test would be whether its conduct in the states had given rise to the plaintiff's claims and a causal link only existed if Ford had designed, manufactured, or sold the cars in question in those forum states, which it had not. Ford, 592 U.S. at 356. The Court determined that the most common formulation of the rule on specific personal jurisdiction demands the suit "arise out of or relate to the defendant's contacts with the forum." Id. at 362. "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." Id. The Court held it has never determined that specific jurisdiction always requires proof of causation, i.e., "proof that the plaintiff's claim came about because of the defendant's in-state conduct." Id. The question is whether there is an affiliation between the forum and the underlying controversy without demanding the inquiry focus on cause. Id. "A different State's courts may yet have jurisdiction, because of another 'activity [or] occurrence' involving the defendant that takes place in the State." Id. 

¶9 The Ford Court acknowledged it had previously held "when a corporation has 'continuously and deliberately exploited a State's market, it must reasonably anticipate being haled into that State's courts' to defend actions 'based on' products causing injury there." Id. at 364 (alterations omitted) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 (1984)). It found that Ford had advertised, sold, and serviced the model of cars that were involved in the injuries in the forum states, i.e., it had "systematically served" those markets. Id. at 364--65. This represented a strong relationship among the defendants, the forum states and the litigation, although the actual vehicles in question were sold in another state. Id. at 365-67. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-298 (1980) (wherein the Court made clear that if a defendant had systematic contacts with the forum state, rather than only an isolated occurrence, it could be held accountable there for a forum-state accident even though it involved a car sold in another state). The Court held that the relationship of the defendants, the forums, and the litigation to Montana and Minnesota was "close enough to support specific jurisdiction." Ford, 592 U.S. at 371. It determined, "principles of 'interstate federalism' support jurisdiction over these suits" in those states. Id. at 368. In doing so, the Court distinguished some of its jurisprudence holding no specific personal jurisdiction existed. Id. at 369--71; Bristol-Myers Squibb, 582 U.S. at 264--65 (wherein the Court found the defendants' activities in the forum state lacked any connection to the plaintiff's claims); Walden v. Fiore, 571 U.S. 277, 289--90 (2014) (only the plaintiffs had any contacts with the forum state; the defendant-officer had never taken any act to form a contact of his own, i.e., never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to the forum state).

¶10 In the 1970's a Texas corporation, Murco Wall Products, Inc., (Murco) sold drywall joint compound to customers in Oklahoma which contained asbestos. Galier, 2022 OK 85528 P.3d 293Ford clarified what types of connections are required to support specific personal jurisdiction, i.e., the "relate to" part of the standard contemplates that some relationships will support jurisdiction without a causal showing. We determined Murco's sales to Oklahoma customers was not an isolated event but rather was a deliberate effort to purposefully avail itself of Oklahoma's market for joint compound. Id. ¶ 25, 528 P.3d at 301. Murco even had a salesperson with a target radius that covered most of Oklahoma. "Murco's contacts with Oklahoma regarded only the sale of their drywall product. Galier's cause of action related to those contacts." Id. Murco argued Galier had failed to trace the Murco asbestos joint compound that he was injured by in Oklahoma to one of its documented sales to a customer in Oklahoma. We found that the relevant caselaw did not require a direct link between Murco's sales to Oklahoma buyers and Galier's exposure to the asbestos. Id. In other words, it is not necessary to trace the injury directly from the defendant's actions in order to find a connection. Id. ¶ 17, 528 P.3d at 299. We held the relationship among the defendant, the forum, and the litigation supported a finding of specific personal jurisdiction. Id. ¶ 28, 528 P.3d at 301.

¶11 In our Galier analysis we also recognized certain "gestalt factors" courts review to determine if personal jurisdiction is appropriate. Id. ¶ 26, 528 P.3d at 301. The concept of "minimum contacts" can be seen to perform two related, but distinguishable functions, the first of which protects the defendant against the burden of litigating in an inconvenient forum and the second of which ensures states do not overstep the limits imposed on them by their status as coequal sovereigns in a federal system. Id. (citing World-Wide Volkswagen Corp., 444 U.S. at 291--92). The protection function is typically described in terms of "reasonableness" or "fairness." Id. In an appropriate case, the burden placed on the defendant should be considered in light of other relevant factors. Id. We noted some of these factors include: the burden on the defendant to litigate in the forum state, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. Id.

¶12 In the present case, the district court's Judgment only addressed one-half of the standard emphasized in Ford, i.e., whether the suit "arises out of" the Respondents' contacts with Oklahoma. It found it did not have specific personal jurisdiction over Dr. Uppal because the treatment occurred in Missouri, and did not have specific personal jurisdiction over FHS because the claims in this litigation "do not arise from" its contacts and connections with Oklahoma. The Judgment failed to address the "back half" of the standard, i.e., whether the suit "relates to" the Respondents' contacts with Oklahoma. Through her response and attached affidavits, Barfell has alleged the Respondents have sufficient minimum contacts with Oklahoma to satisfy personal jurisdiction. These contacts include: 1) FHS is registered to conduct business in Oklahoma; 2) FHS leases buildings and operates medical facilities in Grove and Miami, Oklahoma; 3) FHS also operates and staffs a clinic in a casino in Quapaw, Oklahoma; 4) FHS employs some Oklahoma residents to work at its facilities in Oklahoma; 5) FHS lists the office and physician information for its Grove and Miami facilities on its website; 6) FHS's website advertises it is a three-hospital system that provides comprehensive healthcare and behavior health sciences to an area that includes more than 450,000 residents in Missouri, Kansas, Oklahoma, and Arkansas; 7) FHS advertises its Missouri facility locations on Missouri television stations that reach northeast Oklahoma; 8) FHS has five billboards in Oklahoma; and 9) from July 2022 through July 2023, FHS saw 7,458 patients with Oklahoma addresses at Freeman Hospital in Joplin, Missouri. In addition to Dr. Uppal's follow-up telephone conversation with Barfell, 

¶13 Although the district court found the suit did not "arise out of" the Respondents' contacts with Oklahoma, it did not answer the question whether the Respondents' contacts with Oklahoma "relate to" the suit. If a court determines the suit does not "arise out of" a defendant's contacts with the forum state, then it should determine whether the suit sufficiently "relates to" the defendant's contacts with Oklahoma, such that specific personal jurisdiction exists. Here, the latter determination did not occur. Of course, even when the defendant has purposefully availed herself of the forum and the case arises out of or relates to those contacts, the court must still consider a variety of "reasonableness" interests to determine if personal jurisdiction is present. Galier, 2022 OK 85

¶14 That said, a correct result arising from the district court's judgment will stand, even though it is reached through incorrect reasoning. See Nichols v. Nichols, 2009 OK 43222 P.3d 1049Akin v. Mo. Pac. Ry. Co., 1998 OK 102977 P.2d 1040Bivins v. State ex rel. Okla. Mem. Hosp., 1996 OK 5917 P.2d 456Suagee v. Cook (In re Estate of Maheras), 1995 OK 40897 P.2d 268Wright v. Grove Sun Newspaper Co., 1994 OK 37873 P.2d 983Willis v. Nowata Land & Cattle Co., 1989 OK 169789 P.2d 1282Davidson v. Gregory, 1989 OK 87780 P.2d 679Utica Nat'l Bank & Tr. Co. v. Associated Producers Co., 1980 OK 172622 P.2d 1061G.A. Mosites Co. of Ft. Worth, Inc. v . Aetna Cas. & Cur. Co., 1976 OK 7545 P.2d 746

¶15 With respect to FHS, we find no such alternative basis for affirming the district court's dismissal for lack of personal jurisdiction at this juncture. Barfell has carried her burden of proof in establishing that FHS has several contacts with the State of Oklahoma. Thus, it remains for the district court to determine whether Barfell is entitled to additional discovery concerning FHS's contacts with the State of Oklahoma and ultimately whether Barfell's suit "relates to" FHS's contacts with the State of Oklahoma.

¶16 With respect to Dr. Uppal, however, we find Barfell has failed to carry her burden of proof at this juncture. The undisputed evidence demonstrates that Dr. Uppal does not live in Oklahoma, does not own any property in Oklahoma, does not practice medicine in Oklahoma, and does not see any patients in Oklahoma. Barfell's bald allegation that some unknown website advertises Dr. Uppal as being admitted at many hospitals, "including Integris Baptist Regional Health Center, which is in Oklahoma," and her attachment of an illegible exhibit to the summary record on appeal fails to meet her burden to support the existence of personal jurisdiction over Dr. Uppal. On this record, Barfell has failed to demonstrate that Dr. Uppal has done anything to purposefully avail himself of conducting activities within Oklahoma. Consequently, an alternative basis does exist for affirming the district court's dismissal without prejudice of Barfell's claims against Dr. Uppal for lack of personal jurisdiction.

IV. CONCLUSION

¶17 Barfell filed suit against multiple doctors and medical facilities alleging various negligent acts. She also alleged FHS and Dr. Uppal had sufficient minimum contacts with Oklahoma for its courts to have specific personal jurisdiction over them. As clarified in Ford Motor Co. v. Montana 8th Judicial District Court, 592 U.S. 351 (2021), the specific personal jurisdiction standard for minimum contacts has two prongs. The district court only addressed one prong in its Judgment granting the Respondents' motion to dismiss for lack of personal jurisdiction. Having determined the suit did not "arise from" the Respondents' contacts with Oklahoma, the court failed to complete the Ford standard for determining specific personal jurisdiction, i.e., whether the Respondents' contacts with Oklahoma sufficiently "relate to" the suit to support specific personal jurisdiction. Nevertheless, a trial court's ruling will not be reversed due to faulty reasoning if it may be affirmed on an alternative basis. We find Barfell successfully met her burden of proof with respect to FHS, but that she failed to meet her burden of proof with respect to Dr. Uppal. Consequently, we hereby vacate the opinion of the Oklahoma Court of Civil Appeals, affirm in part and reverse in part the Judgment of the district court, and remand the matter to the district court for further proceedings consistent with the opinion expressed herein.

COURT OF CIVIL APPEALS OPINION VACATED; 
TRIAL COURT ORDER AFFIRMED IN PART AND REVERSED IN PART;
REMANDED FOR FURTHER PROCEEDINGS.

KUEHN, V.C.J., and WINCHESTER, EDMONDSON, COMBS, GURICH, DARBY, KANE, and JETT (by separate writing), JJ., concur.

ROWE, C.J., dissents.

FOOTNOTES

Ford, 592 U.S. at 365. The Court noted Ford had done so "[b]y every means imaginable---among them, billboards, TV and radio spots, print ads, and direct mail--in addition to providing repair and part services within the states. Id. Those activities made Ford money and by making it easier to own a Ford in the forum states it encouraged Montanans and Minnesotans to become lifelong Ford drivers. Id. The Court also opined that "the owners of these cars might never have bought them, and so these suits might never had arisen, except for Ford's contacts with their home States. Those contacts might have turned any resident of Montana or Minnesota into a Ford owner . . . ." Id. at 367.

Vance v. Molina, 2001 OK 6028 P.3d 570Vance. However, in Vance we held that the contacts of a Texas doctor with Oklahoma were too insubstantial to establish minimum contacts necessary for personal jurisdiction. Vance, 2001 OK 60Vance was decided twenty years before Ford clarified that "relate to" means something different than "arise from."

 

 

Jett, J., with whom, Kane, J., joins, concurring specially:

¶1 I concur that Plaintiff/Appellant Whitney Barfell has not established that the trial court has personal jurisdiction over Defendant/Appellee Dr. Gulshan Uppal. Dr. Uppal has not purposefully availed himself to jurisdiction in Oklahoma.

¶2 I write separately to address the issue of whether Plaintiff Barfell's claims "relate to" Defendant/Appellee Freeman Health System's (Freeman) contacts with Oklahoma. Allowing the trial court to apply the "relates to" test in the first instance is prudent, and I concur in the majority's decision. The trial court may allow additional discovery and take additional evidence to assess personal jurisdiction in light of the guidance provided by Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351 (2021).

¶3 I join the majority in reversing on this point because the trial court judgment does not indicate that the trial court considered the "relates to" question. My decision should not be taken as predetermining that personal jurisdiction over Freeman exists. The trial court should take a fresh look at whether Plaintiff's claims "relate to" Freeman's Oklahoma contacts.

I.

¶4 Applying the "relates to" prong of the personal jurisdiction test highlighted in Ford is not without challenge. As the Fifth Circuit Court of Appeals noted with respect to Ford, "It is a perilous project to interpret a Supreme Court decision that the Justices themselves interpret differently." Ethridge v. Samsung SDI Co., Ltd., 137 F.4th 309, 317 (5th Cir. 2025). Yet, in assessing personal jurisdiction, we are obliged to apply this precedent.

¶5 There are two kinds of personal jurisdiction: generalFord Motor Co., 592 U.S. at 358. For specific personal jurisdiction, which is applicable to this case, "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing International Shoe Co. v. State of Washington, 326 U.S. 310, 319 (1945)). Even if a defendant has purposefully availed itself to the forum state, a court "may exercise jurisdiction in only certain cases." Ford Motor Co., 592 U.S. at 359. "The plaintiff 's claims . . . 'must arise out of or relate to the defendant's contacts' with the forum." Id. (citation omitted). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." Id. at 362.

¶6 "Even when the defendant has purposefully availed himself of the forum and the case arises out of or relates to those contacts, the court must still consider a variety of 'reasonableness' interests to determine if personal jurisdiction is present." Galier v. Murco Wall Prods., Inc., 2022 OK 85528 P.3d 293World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). These factors include: (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of such controversies;" and (5) "the shared interest of the several States in furthering fundamental substantive social policies." World-Wide Volkswagen, 444 U.S. at 292.

¶7 Thus, for an Oklahoma court to exercise specific personal jurisdiction over an out of state defendant in compliance with federal due process, it must be established that "(1) the defendant purposefully availed itself of the privilege of conducting [business] in the [state of Oklahoma], (2) the plaintiff's claim arises out of or relates to those purposeful contacts with [Oklahoma], and (3) the exercise of personal jurisdiction [is] fair and reasonable." Ethridge, 137 F.4th at 314.

II.

¶8 Ford and its progeny provide three questions to analyze in determining if Plaintiff's injuries "relate to" Freeman's contacts with Oklahoma:

A. Whether a defendant's contacts could have caused the kind of injury allegedly suffered by the plaintiff. See Yamashita v. LG Chem, Ltd., 62 F.4th 496, 505 (9th Cir. 2023) (analyzing Ford).

B. Whether the injury suffered by a plaintiff was foreseeable based on a defendant's contacts with the forum. Id. at 506.

C. Whether the injury has a sufficient nexus to the defendant's contacts to avoid subjecting defendants to the equivalent of general jurisdiction. See Bernhardt v. Islamic Republic of Iran, 47 F.4th 856, 866 (D.C. Cir. 2022); Ford, 592 U.S. at 362 ("[T]he phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum.").

A.

¶9 Ford demonstrates that a court must consider whether a defendant's contacts could have caused the kind of injury allegedly suffered by the plaintiff. The plaintiffs in Ford were injured in cars not originally sold in the respective forums for plaintiffs' lawsuits. 592 U.S. at 357. Both plaintiffs alleged their injuries were the result of accidents caused by defective Ford automobiles. Id. at 356.

¶10 Assessing personal jurisdiction, the Court recognized, "Ford had advertised, sold, and serviced those two car models in both States for many years." Id. at 365. "By every means imaginable . . . Ford urges Montanans and Minnesotans to buy its vehicles . . . ." Id. Ford agreed that if the injured plaintiffs had purchased their cars in the forum state, personal jurisdiction would be appropriate. Id. at 361--62. The Court then detailed how Ford's repeated "contacts might turn any resident of [the forum] into a Ford owner . . . ." Id. at 367 (emphasis added). Because Ford's contacts could have theoretically caused the injury alleged, Ford's contacts with the forum state made jurisdiction appropriate. See id. ("[T]he possibilities listed above-- created by the reach of Ford's Montana and Minnesota contacts--underscore the aptness of finding jurisdiction here, even though the cars at issue were first sold out of state.").

¶11 But the theoretical injury concept within Ford has limits. When describing the advertising, sales, and service of the precise cars that injured plaintiffs, the Ford court offered an important contrasting parenthetical: "Contrast a case, which we do not address, in which Ford marketed the models in only a different State or region." Id. at 365. While purportedly not addressed by the U.S. Supreme Court, the Ninth Circuit recognized that the Supreme Court's reasoning for permitting personal jurisdiction "would not apply if Ford had marketed only other models in the forum States . . . ." Yamashita, 62 F.4th at 505. Thus, just any contact with the forum will not do. There must be a more precise type of contact that could have directly caused the injury alleged.

¶12 After Ford, the Fifth Circuit analyzed a case in which the plaintiff was injured by a battery manufactured by the defendant. Ethridge, 137 F.4th 309. The precise battery that caused Plaintiff's injury was not sold by Defendant to a buyer in Texas. Id. at 313. However, in other transactions, the defendant company sold the same kind of battery directly to customers in Texas. Id. at 317. "There is no reason to believe that those . . . batteries are different in any way from the . . . battery that exploded in [the plaintiff's] pocket." Id. The specific battery shipped to the forum could have theoretically caused the harm alleged by the plaintiff, and thus the Fifth Circuit held the defendant's contacts related to the injuries alleged. Id. at 318.

B.

¶13 Next, a court must consider whether the injury suffered by a plaintiff was foreseeable based on a defendant's contacts with the forum. The Ford Court reasoned that the company's activity in the forum was such that Ford could foresee the alleged injury occurring in the forum. "An automaker regularly marketing a vehicle in a State. . . has 'clear notice' that it will be subject to jurisdiction in the State's courts when the product malfunctions there (regardless where it was first sold)." Ford Motor Co., 592 U.S. at 368 (quoting World-Wide Volkswagen, 444 U.S. at 297). Thus, when a plaintiff has pervasive contacts with a forum state, injuries arising from those contacts are foreseeable.

C.

¶14 Finally, a trial court must consider whether the injury has a sufficient nexus to the defendant's contacts to avoid subjecting a defendant to the equivalent of general jurisdiction. The Court in Ford was clear that "relates to" does not mean anything goes. 592 U.S. at 362. The Ford court warned that the phrase 'relate to' incorporates real limits, as it must adequately protect defendants foreign to a forum." Id. Without real limits, the "relates to" prong will expand and eventually "collapse the core distinction between general and specific personal jurisdiction." Bernhardt, 47 F.4th at 866.

¶15 In Grano v. HCA Healthcare, Inc., the New Mexico Court of Appeals applied Ford's "relates to" test in the medical malpractice context. No. A-1-CA-39669, 2023 WL 2921093, at *1 (N.M. Ct. App. Apr. 12, 2023), cert. denied, Grano v. HCA Healthcare, Inc., 2023-NMCERT-006, ¶ 2, 547 P.3d 83, and cert. denied sub nom. Grano v. El Paso Healthcare Sys., Ltd., 144 S. Ct. 394, 217 L. Ed. 2d 213 (2023). The plaintiff suffered a carotid artery bleed after undergoing a procedure in a New Mexico hospital. Id. at *1. The plaintiff was then transferred to a hospital in El Paso, Texas. Id. After discharge, the plaintiff died, and his personal representative sued the Texas hospital among other defendants. Id.

¶16 The record in Grano demonstrated that the Texas hospital knowingly served New Mexico residents at its El Paso facilities, which border New Mexico. Id. at *2. The Texas hospital also operated a bariatric referral clinic in Albuquerque, New Mexico in which physicians evaluated patients for weight loss surgery to be performed in El Paso, Texas. Id. The Texas hospital directly marketed its bariatric services to New Mexicans. Id. Finally, the Texas hospital had transfer agreements with New Mexico hospitals like the one exercised to transfer the plaintiff to El Paso when he suffered a medical emergency. Id.

¶17 Applying Ford, the New Mexico Court of Appeals held that the plaintiff had not established personal jurisdiction over the Texas hospital. "[U]nlike the car models in Ford . . . , the bariatric referrals are not related to the alleged malpractice." Id. at *3. The Texas hospital's New Mexico contacts--the provision and advertising of different healthcare services--were insufficient to establish personal jurisdiction. This demonstrates the "real limits" under the "relates to" prong.

III.

¶18 In this case, the trial court should consider whether Freeman's contacts in the forum state--clinical operations, advertising, etc.--could have caused the injury alleged by the plaintiff. Additionally, the trial court should consider whether it was foreseeable that Freeman's contacts with Oklahoma could have led to the kind of injury suffered by Plaintiff. Finally, the trial court should consider whether there is a sufficient nexus between the injury and Freeman's contacts so that Freeman is not subjected to the equivalent of general personal jurisdiction in Oklahoma.

FOOTNOTES